# UNITED STATES DISTRICT COURT, DISTRICT OF COLUMBIA

## No. 09-01856 (HHK)

| | |
|---|---|
| T. CARLTON RICHARDSON, <br><br> RECEIVED <br> NOV 17 2009 <br> NANCY MAYER WHITTINGTON, CLERK <br> U.S. DISTRICT COURT <br><br> *Plaintiff/Petitioner* | DISTRICT OF COLUMBIA, *ET AL.,* <br><br> *Defendants* <br><br> -and- <br><br> D.C. OFFICE OF ATTORNEY GENERAL <br><br> *Respondents* |

## MOTION FOR PARTIAL SUMMARY JUDGMENT, CONTEMPT OF COURT & REFERRAL FOR CRIMINAL PROSECUTION[1] *(Verified)*

### ◄INDEX►

1.0 PREFACE--2
2.0 STATEMENT OF FACTS--2
2.1 OVERVIEW--3
2.2 EVIDENCE NONDISCLOSURE & CONCEALMENT; JUSTICE OBSTRUCTION--5
3.0 STATEMENT & APPLICATION OF LEGAL PRINCIPLES INVOLVED--7
3.1 INTRODUCTION--7
3.2 FRAUD UPON THE COURT--9
3.3 UNDISCLOSED/CONCEALED EVIDENCE, JUSTICE OBSTRUCTION, & DUE PROCESS/FAIR TRIAL DENIAL--9
4.0 CONCLUSION & RELIEF REQUESTED--35
5.0 VERIFICATION--36
6.0 CERTIFICATE OF SERVICE--36
■ APPENDIX (STATEMENT OF UNDISPUTED FACTS)--37

---

[1] *Emphasis* supplied and "Civ.R." are to the Federal Rules of Civil Procedures, unless otherwise stated.

## 1.0 PREFACE

This cause of action arises primarily out of the unconstitutionality and unconstitutional application of D.C. Code §11-2503 (b) and D.C. Bar XI regulations governing the reciprocal discipline of attorneys under the regulatory aegis of the defendant D.C. Court of Appeals which resulted in the interim and final revocation of the plaintiff's license to practice law without notice or an evidentiary hearing in violation of his due process rights under the 5th (due process) and 6th (right to confrontation) Amendments of the U.S. Constitution as well as the D.C. Administrative Procedures Act [cf. D.C. Code §2-509] and relevant provisions of the D.C. Code, D.C Bar Rules, and D.C. Board on Professional Responsibility Rules governing the investigation of complaints for misconduct arising within and without the jurisdictional boundaries of the D.C. courts.  Partial summary judgment under F.R.Civ.P. 56 and L.Cv.R. 56.1 on grounds that the [1] D.C. Code and Bar rules and regulations governing reciprocal disciplinary matters are unconstitutional on their face and as applied, therefore the district court cannot give full faith and credit to the reciprocal disciplinary interim orders and final judgment of the D.C. Court of Appeals in Richardson's case having been rendered under the unconstitutional D.C. statutes and Bar rules and regulations as averred by the plaintiff.

And [2] on grounds that the defendants, and specifically respondent D. C. Attorney General's Office concealed and failed to disclose the existence of a 1992-1994 *undocketed* investigatory bar disciplinary proceedings against Richardson from him and the district court resulting in the obstruction of justice and fraud upon the district court. Additionally, [3] the respondent D.C. Attorney General should be cited for contempt of court for such nondisclosure, concealment and obstruction of justice and [4] the matter referred to the U.S. Attorney's Office for criminal prosecution of those employees of the D.C. Court of Appeals Office of Bar Counsel and D.C. Attorney General's office who participated in the nondisclosure, concealment and obstruction of justice.

## 2.0 STATEMENT OF FACTS

Plaintiff relies upon the detailed facts appearing in ¶¶9 - 42 of the verified Complaint and are incorporated herein by this reference and incorporates by reference the legal arguments stated in his

Motion for Default Judgment.[2] Also said portion of the verified Complaint constitutes plaintiff's statement of undisputed material facts [App. "A": Statement of Undisputed Facts (L.Civ.R. 56.1)-- Excerpts from Compl., ¶¶ 9 - 42)].

## 2.1 OVERVIEW

After Richardson suffered on June 27, 1995 interim summary suspension of his license to practice law in D.C., he brought a action in the federal courts challenging that suspension on grounds of the unconstitutionality of the D.C. Bar reciprocal disciplinary procedures since revocation of an attorney's license is accomplished with notice or opportunity to be heard, which violates due process under the 5th (due process clause) and 6th (right to confrontation clause) of the U.S. Constitution. The federal court action was dismissed in part based upon a lack of jurisdiction under the court's flawed interpretation and application of the *Rooker-Feldman* doctrine[3] and based upon the judicial *Younger* [*vs. Harris*, U.S. 401:37, S.Ct. 91:746 (1971)] doctrine of abstention after an evidentiary hearing in which the D.C. Attorney General's office, who represented the D.C. Court of Appeals, its agencies and employees, never

---

[2] Thanks to the good offices of Dr. Webster, lead counsel for the defendants, who provided plaintiff by letter hand on November 16, 2009 with a copy of the docket sheet which showed that the district court *sua sponte* entered an Minute Order (10/19/2009) on defendants' Joint Motion for Extension of Time to File an Answer or Responsive Pleading and to Respond to Motion for Injunction (10/16/2009) allowing them until "November 19, 2009" to respond. This Minute Order was entered by the district court within three (3) days of the Joint Motion's filing without entertaining the opposition of the plaintiff (10/20/2009). Moreover, the plaintiff has *never* received a copy of the Minute Order. Dr. Webster requested that plaintiff "withdraw" the default judgment motion, however in lieu of withdrawal, it legal arguments are incorporated by reference into this motion. It is respectfully requested that the district court inform its clerk that the plaintiff is to receive hard copies of all orders of the court upon entry by mail since plaintiff is appearing *pro se* or alternatively if the district court would send a copy of its orders to the plaintiff at the time they are filed with the clerk. This way the plaintiff will be assured of notice of the district court's actions, whether *sua sponte* or not.

[3] *Rooker v. Fidelity Trust Co.*, U.S. 263:413, S.Ct. 44:149 (1923), *D.C. Court of Appeals v. Feldman,* U.S. 460:462, 103 S.Ct. 1303 (1983), and *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, U.S. 544:280, S.Ct. 125:1517 (2005). The *Rooker-Feldman* doctrine was established by the Supreme Court to prevent encroachment by lower federal courts into the Court's appellate review authority over State courts under 28 U.S.C. §1257 and to preserve the federal-state balance of judicial power ("comity") from inappropriate incursions by lower federal courts into State court affairs. It states that federal court review of *valid* judgments rendered by State courts (including the local courts of D.C.) with personal and subject matter jurisdiction and without violating constitutional due process and fair trial procedures can only occur in the U.S. Supreme Court on appeal or by writ of certiorari. However, in federal court proceedings a valid State court judgment provides jurisdictional preclusion to any claim or issue of fact or law determined in those proceedings, *except* where the constitutionality of State court bar rules are involved, in which case the federal court must examine any such claim or issue of fact or law *de novo*.

provided Richardson nor the district court on the 1992-1994 undocketed investigation[4] (*Richardson/Rankin*) for charging an unreasonable fee and fiduciary improprieties that was "merged" with the approval of the 'contact member' of the D.C. Board on Professional Responsibility into a newly opened *docketed* 1994-1995 investigation (*Richardson/Bar Counsel*) for resigning the Florida Bar while under disciplinary investigation for the misconduct of charging an unreasonable fee and fiduciary improprieties. Both the *Rankin* and *Bar Counsel* investigations overlapped for about a month during the 'contact member's' review process for their merger.

Under D.C. bar rules, Richardson was entitled to notice of both investigations, but only received notice of the *Bar Counsel* investigation being provided with a copy of the Florida Supreme Court's resignation order only. To date Richardson has never received copies of the investigation records in the 1992-1994 *Rankin* undocketed investigation, or the name of the Board's contact person who facilitated it merger with the 1994-1995 *Bar Counsel* docketed investigation.

Since bar disciplinary proceedings are *quasi*-criminal in nature,[5] *Brady* principles[6] which require which require prosecutors to disclose exculpatory and material evidence to an accused attorney are applicable. D.C. Attorney General's office failed to disclose, in fact concealed, the existence of the *Rankin* investigation to Richardson and the district court which constituted an obstruction of justice and a fraud upon the court. Moreover, the D.C. Attorney General's office expressly represented to the district court (Judge Hogan presiding), that Richardson would receive due process and an opportunity to challenge the suspension, omitting to tell the district court that the reciprocal disciplinary proceedings were based upon an undisclosed investigation, which the Attorney General's office was required to do.

---

[4] The *undocketed* bar disciplinary investigation was based upon a complaint by Florida citizens (beneficiaries and co-trustees of a private revocable trust), through their attorney, that between 1989-1990 Richardson charged an unreasonable fee to the trust's deceased settlor and later the trust itself, and misappropriated trust funds in violation of Richardson's fiduciary duty and responsibility as chief co-trustee of the trust by allegedly receiving excessive compensation.

[5] *In re Ruffalo*, U.S. 390:544, *550*, S.Ct. 88:1222, *mod. on other grds*, U.S. 392:919, S. Ct. 88: 2257 (1968)

[6] *Brady v. Maryland* U.S. 373:83; S. Ct. 83:1194 (1963) principles developed under the 5th Amd.'s due process clause require disclosure of investigatory information and materials in bar disciplinary proceedings. Failure to disclose or the concealment of exculpatory evidence in bar disciplinary proceedings denies an accused attorney due process and the right to a fair trial.

Such omission or statement of half-truth was an outright misrepresentation to the district court that constitutes grounds for a citation of contempt. [7]

## 2.2  EVIDENCE NONDISCLOSURE & CONCEALMENT; JUSTICE OBSTRUCTION

Bar prosecutors obstructed justice in the following particulars, by the concealment of existence and records

- in *Richardson/Rankin* investigation (B.D. No. 511-92) from Board and D.C. Court of Appeals (DCCA);
- of the merger of *Richardson/Rankin* investigation (B.D. No. 511-92 with *Richardson/Bar Counsel* investigation (B.D. No. 180-94) from Board and D.C. Court of Appeals;
- in *Richardson/Rankin* investigation and merger from accused attorney;
- in *Richardson/Rankin* investigation and merger from DCCA in related civil and criminal contempt proceedings; and
- in collateral federal trial and appellate proceedings for violation of civil rights, injunctive relief and habeas corpus arising out of the reciprocal disciplinary, civil and criminal contempt proceedings.

And failed to perform their duty to disclosure material evidence resulting in the following injury to the Richardson in addition to constituting "fraud upon the court" in that nondisclosure and concealment of evidence:

- Interfered with and prevented in interim and final stages of reciprocal discipline the discovery that bar prosecutors charges were fraudulent in that while the bar prosecutors represented that the misconduct charge was based upon Richardson's resignation order of the Florida Bar, in fact, it was based upon the undocketed investigatory records of complainant Rankin, an attorney representing interested parties in a private Florida trust who alleged that Richardson charged excessive fees to the trust and misappropriated trust funds;
- Interfered with Richardson presenting the defense that the merger of the *Richardson/Rankin* and the *Richardson/Bar Counsel* investigations was improper being done without notice or opportunity to heard, in violation of the plaintiff's due process rights to be heard on the *Richardson/Rankin* complaint as an original domiciliary matter since the allegations of

---

[7] District Court Judge Hogan, opined: "*The District has represented*, and I don't believe it's improper, that [Richardson] has a right to file exemptions (*sic*= exceptions) to the recommendations, for this interim suspension as it's pending before the D.C. Court of Appeals, *an opportunity to be heard* before the [B]oard [on Professional Responsibility] and before the D.C. Court of Appeals.   He has and *can continue to present challenges and briefs and oral arguments on the adequacy of the District of Columbia process [sic: and] constitutionality of these rules* be heard whether or not there should be  greater or lesser discipline or no discipline  asserted against him in D.C. [App. "B", Compl. at 55: *T. Carlton Richardson v. District of Columbia Court of Appeals*,  C.A. No. 95-01272 (D.C.D.C., Hogan, J).: (1) *Order* dismissing action  for lack of jurisdiction re "disciplinary status" and abstaining re "constitutional arguments" per reasons stated in "bench opinion" (08/01/1995) and (2) *bench opinion*].

misconduct in *Rankin* were not a lesser included offense to the misconduct alleged in *Bar Counsel* since both investigations only had one misconduct (charging an unreasonable fee) in common;

- Interfered with the presentation of defenses in collateral civil and criminal contempt proceedings since bar prosecutors failed to disclose the existence of the *Richardson/Rankin* investigation and in the criminal contempt procedure committed a *Brady* violation and expressly represented to the court that the prosecutors had no evidence to reveal;

- Interfered with and prevented Richardson's prosecution of federal complaints for violation of civil rights, injunctive relief and habeas corpus since attorneys representing the DCCA and/or its employees or agents failed to provide the federal courts with the information regarding the *Richardson/Rankin* investigation that would have affected the outcome of those proceedings which were all dismissed against the plaintiff on lack of federal jurisdiction grounds without evidentiary hearings.

In three (3) instances Richardson was denied due process in that no notice was given him of the following:

- When *Richardson/Rankin* investigation (B.D. No. 511-92) instituted;
- When *Richardson/Rankin* investigation (B.D. No. 511-92) was merged with *Richardson/Bar Counsel* investigation (B.D. No. 180-94); and
- When providing mandated discovery in criminal contempt proceedings failed to disclose *Richardson/Rankin* claiming that Bar Counsel was unaware of any documents or other materials that may be considered favorable, exculpatory, and material and therefore are required to be disclosed under *Brady v. Maryland.*

Finally the Richardson failed to receive the due process and fair trial procedures guaranteed under the 5th and 6th Amds., U.S. Const., D.C. Code provisions governing the regulation of the practice of law [D.C. Code § 11-2503(b)] and administrative procedures [D.C. Code (2001) §2-509], and D.C. Bar rules [Bd. R. 2.3, 2.7, and 2.8; Bar R. XI, §6(a)(2)] governing the investigation of disciplinary matters in the following particulars:

- On allegations of misconduct contained in *Richardson/Rankin* complaint; and
- On the allegations of jurisdictional and misconduct facts and on the omission of material information and documentation presented in bar prosecutors' *ex parte* submission to DCCA for automatic entry of interim suspension based upon accused attorney's uncontested resignation of the Florida Bar while under disciplinary investigation for misconduct and while under suspension for previous misconduct convictions;
- On the determination by a Board lacking partiality because one of its members was disqualified by virtue of having independent knowledge of the allegations of misconduct having served as the "contact member" in *Richardson/Rankin* and approved its merger with *Richardson/Bar Counsel*; and
- On the finding of misconduct and imposition of sanctions by the Board based solely upon hearsay evidence in the nature of unsworn statements by the complaining client's attorney (Rankin) and the Florida Bar prosecutor in its response to the accused attorney's resignation of Florida Bar.

### 3.0 STATEMENT & APPLICATION OF LEGAL PRINCIPLES INVOLVED

### 3.1 INTRODUCTION

Bar prosecutors have obstructed justice by  secretly conducting an investigation for alleged multiple violations by plaintiff of the D.C. Bar Rules of Professional Conduct (RPC) in violation of Board and D.C. Bar Rules resulting in the denial of plaintiff's due process rights under those Rules, concealing and destroying records of the investigation, and misleading through omissions, half-truths, and false statements the Board and D.C. Court of Appeals  (DCCA) resulting in deprivation of the plaintiff's license to practice law without due process of law and interfering with the fair consideration by the Board and DCCA by depriving them of a full and complete record of the underlying facts and relevant authority required for the fair and impartial operation of their decisionmaking judicial and quasi-judicial functions. Such obstruction of justice violated the criminal statutes governing obstructing justice in the District of Columbia, including tampering with evidence, and ethical standards of conduct for attorneys, especially prosecutors.

As to the nondisclosure of evidence, there is a constitutional and ethical responsibility imposed upon bar prosecutors to disclose material information that would bear upon a determination of misconduct or sanctions.  Bar prosecutor's nondisclosure violated the plaintiff's due process and fair trial procedure rights under the 5th (notice and hearing) and 6th (confrontation) Amendments of the U.S. Constitution, the Board Rules and the Professional Rules of Conduct imposing special prosecutorial duties and responsibilities.  Specifically, bar prosecutors (1) have violated their duty to fully disclose its disciplinary investigatory activities to the plaintiff, the D.C. Court of Appeals and the federal courts, (2) have violated Board Rules governing processing, investigating, and instituting disciplinary proceedings against the plaintiff, and (3) have knowingly presented (or omitted to present when under an legal and ethical duty to do so) false and misleading documents and made false and misleading statements in submissions to the D.C. Court of Appeals and federal courts that resulted in the plaintiff's license to practice of law being summarily revoked without notice or opportunity to be heard in June 1995, in March 1996, and finally

revoked in June 1997 and dismissal of civil rights actions and other litigations in the federal courts arising out of Richardson's license revocation.

Former and present members of the Office of Bar Counsel (OBC or bar prosecutors) have participated in illegal and unethical activities obstructing justice and failing to disclose evidence that constitute misconduct of the most egregious type that goes to the heart of the integrity of the bar disciplinary enforcement system. These improper prosecutorial activities constitute adequate grounds for the grant of summary judgment, citation for contempt and referral to the U.S. Attorney's office for criminal prosecution for obstruction of justice.

## 3.2 FRAUD UPON THE COURT

A "fraud on the court" occurs where it can be demonstrated, clearly and convincingly, that a party has sentiently set in motion some unconscionable scheme calculated to interfere with the judicial system's ability impartially to adjudicate a matter by improperly influencing the trier or unfairly hampering the presentation of the opposing party's claim or defense [*Aoude v. Mobil Oil Corp.*, F.2d 892:1115, *1118* (1st Cir.1989); *Kupferman v. Consolidated Research & Mfg. Corp.*, F.2d 459:1072, *1078* (2d Cir.1972); 7 Moore's Federal Practice, 2d Ed. §60.23] "Fraud upon the court" is narrowly construed [*Aoude*] and has been found only in those instances where the fraud vitiates the court's ability to reach an impartial disposition of the case before it. It must involve an unconscionable plan or scheme which is designed to improperly influence the court in its decision, preventing the opposing party from fully and fairly presenting his case [*Davenport Recycling Associates v. C.I.R.*, F.3d. 220:1255 (11th Cir. 2000)]

Moreover, an alleged "fraud upon the court" must be material and to have affected the outcome of the case. It must be demonstrated by clear and convincing evidence that the offender intended to mislead the court. In other words, how the offender's conduct induced, caused or had a material effect upon the court's decision such as where the offender's conduct interfered with an adversary's ability to fairly and fully present the adversary's case before the court. A classic example is when an offender is shown to be "guilty of misrepresentation or concealment or that the court was in any way deceived as to the facts on which it based its decision" [*Drobny v. Commissioner*, F.3d 113:670, *676* (7th Cir.1997)]

## 3.3   UNDISCLOSED/CONCEALED EVIDENCE, JUSTICE OBSTRUCTION, & DUE PROCESS/FAIR TRIAL DENIAL

### A.

Obstruction of justice is defined as impeding or obstructing those who seek justice in official -- judicial, quasi-judicial or administrative -- proceedings or those who have duties or powers of administering justice in those proceedings [*United States v. Cihak*, F.3d 137:252 (5th Cir., 1998) [Obstruction of justice involves any attempt to impede the due administration of justice.] See generally,

Obstructing Justice, 67 C.J.S.; Obstructing Justice, 58 Am. Jur. 2nd]. It is a violation of the common law, D.C. statutes, and D.C. Bar Rules governing professional conduct to obstruct justice.

At common law, it is an offense to do any act which prevents, obstructs, impedes, or hinders public or legal justice [67 C. J. S. §1 Definitions and offenses]. Under D.C. Code §22-722(a)(6) a

> person commits the offense of obstruction of justice if that person: …
> *corruptly … [in] any way* obstructs or impedes or *endeavors* to impede
> the due administration of justice in any official proceedings.

Also, analogous to the D.C. statute is U.S.C.A. §18:1503 making it a federal offense to endeavor to obstruct the due administration of justice. See regarding its construction and application, 20 A.L.R. Fed. 731 §9.8. Furthermore, under D.C. Code §22-723(a), a

> person commits the *offense of tampering with physical evidence* if,
> knowing or having a reason to believe an official proceeding has begun
> or knowing that an official proceeding is likely to be instituted, that
> person alters, destroys, mutilates, *conceals*, or *removes a record,
> document*, or other object  with intent to *impair* its integrity or *its
> availability for use in the official proceedings*.

And  under the D.C. Bar Rules of Professional Conduct (RFC),

> [i]t is *professional misconduct* for a lawyer to … [c]ommit a *criminal act*
> that reflects adversely on the lawyer's *honesty, trustworthiness*, or fitness
> as a lawyer in other respects; … engage in *conduct* involving *dishonesty*,
> fraud, *deceit*, or *misrepresentation*; … [or] engage in *conduct* that
> seriously *interferes with the administration of justice*. RFC, R. 8.4 (b),
> (c), and (d)

The gist of the offense of obstruction of justice is an endeavor to interfere with the administration of justice [*Irving v. United States*, A.2d 673:1284, *1289* (DC, 1996)]. Materiality is not an element of the offense of obstruction of justice [*United States v. Aguilar*, U.S. 515:593, *609-610*, S.Ct. 115:2357, *2367* (1995) [Interpreting the federal obstructing justice statute, *supra*.]. An "endeavor"

> does not require success or even an overt attempt; it merely requires that
> the defendant have made any effort or essay to accomplish the evil
> purpose that the statute was enacted to prevent. Id. (Internal quotation
> marks and citations omitted)

Partial success in the endeavor is not even required [Id.]. In the obstruction of justice context, the requisite intent may be  "inferred from the context and nature of the alleged … conduct" [*McBride v.*

*United States*, A.2d 393:123, *131* (DC, 1978)].

An "endeavor" to obstruct justice must be made "corruptly.". The term "corruptly" in criminal laws has a longstanding and well-accepted meaning [*Aguilar*]. It denotes an act done with intent to give some advantage inconsistent with official duty and the rights of others [Id, U.S. 515:*616*, S.Ct. 115:*2370*]. An act may be "corruptly" done though the advantage to be derived from it is not offered by another [Id.].

> An act is done *corruptly* if it's done *voluntarily and intentionally to bring about either an unlawful result or a lawful result by some unlawful method, with a hope or expectation of* either financial gain or *other benefit to oneself or a benefit of another person.* … Moreover, … [a]cts specifically intended to "influence, obstruct, or impede the due administration of justice" are obviously wrongful, just as they are necessarily "corrupt" [Id. U.S. 515:*616-617*, S.Ct. 115:*2370*].

Did the action by bar prosecutors in failing to disclose the existence and contents of B.D. No. 511-92 (*Richardson/Rankin*) to the plaintiff or the DCCA constitute obstruction of justice? Of course, and here are the reasons why:

Bar prosecutors are guilty of the obstruction of justice in that they have "corruptly" concealed the institution and existence of disciplinary investigation B.D. No. 511-92 (*Richardson/Rankin*) from May *1992* to February *2002* and completely suppressed the contents of B.D. No. 511-92 from May 1992 to May 1995 when a bar prosecutor (DeSilva) provided copies of the May 1992 and May 1995 letter complaints from the Florida attorney Rankin who represents the former clients of the plaintiff in litigation an a civil action claiming that the plaintiff received excess compensation, misappropriated funds and otherwise breached his fiduciary duty in the Overton Trust. And since May 1995 has either partially suppressed the remaining contents of the investigative file for B.D. No. 511-92 or has destroyed its contents. On January 28, 1998 in plaintiff's criminal contempt proceedings the bar prosecutors expressly stated, "*Brady Materials*: Bar Counsel is unaware of any documents or other materials that may be considered favorable, exculpatory, and material and therefore are required to be disclosed under *Brady v. Maryland,* 373 U.S. 83 (1963)."

Opening a bar disciplinary investigation is mandatory under Bd. R. 2.3

> if it is not unfounded on its face; (2) *contains allegations which,*
> *if true, would constitute a violation of* the Attorney's Oath of
> Office or *the rules of professional responsibility that would merit*
> *discipline*; and (3) is within the jurisdiction of the Board.

Once a complaint is docketed an accused attorney is entitled to be "promptly notified", provided with "a

copy of the complaint or other documents" upon which the complaint is based and given an opportunity to

submit a "written response" [Bd. R. 2.7, 2.8] Moreover, "*no disposition[8] shall be recommended or*

*undertaken* by Bar Counsel until the accused attorney *shall have been afforded an opportunity to respond*

to the allegations" [D.C. Bar R. XI, §6 (2)].

Upon receipt of the August 1992 Rankin letter with  53 pages of attachments (later supplemented

by the May 1994 Rankin letter with 78 pages of attachments) which contained a civil complaint alleging

excessive compensation, misappropriation of funds by theft, and other breach of fiduciary duties by

plaintiff, the bar prosecutors determined that this was 'not a complaint' and 'opened an undocketed case

file'.  On April 18, 1994, the case file for B.D. No. 511-92 was forwarded to the Board Contact Member

for approval of merger with B.D. No. 180-94 (*Richardson/Bar Counsel*--Reciprocal Discipline based

upon Florida Resignation Order).   Concurrently, a reciprocal disciplinary investigation for charging an

unreasonable fee in the Overton Trust based upon plaintiff's Florida Bar resignation order had already

been opened  by an internal "referral" on  April 12, 1994 six (6) days *before* the file was  transferred to

the Contact Member for approval of merger, a D.C. Bar R. XI, §6(2) "disposition … recommended …

with[out] afford[ing] an opportunity to respond" to the plaintiff.

Within a month, on May 9, 1994, the Board Contact Member 'approved the case' being 'closed

and merged' with 180-94. **There is no indication whether the Board's Contact Member later served**

**on the Board when B.D. #180-94 was being considered.  If so, that would be a violation of the**

**recusal rules of the Board [see, Bd. R. 2.15 and 2.18] and the due process rights of the plaintiff to an**

**impartial decisionmaking panel [***In re Murchinson,* U.S. 349:113, S.Ct. 75:623 (1955) (A "fair trial *in*

---

[8] Disposition means, "the act or the power of disposing ('to deal with conclusively') … : … administ[er],
control." *Webster's New Collegiate Dictionary* 241 (7th ed., 1969)

*a fair tribunal* is a basic requirement of due process.")]

Plaintiff was never notified that B.D. No. 511-92 was received and treated as an "undocketed" matter. From the August 1992 Rankin letter that triggered the opening of the undocketed matter, B.D. No. 511-92 (*Richardson/Rankin*) on the face of the documents clearly revealed, if true, violations of at least the following D.C. Rules of Professional Conduct (RFC):

> 1.5 Fees [excessive compensation allegation in "Amended Complaint"]
> 1.15 Safekeeping property [misappropriation of funds and breach of fiduciary
>     duties allegation in "Amended Complaint"]
> 8.4(b), (c) -- Misconduct [excessive compensation, misappropriation of funds
>     and breach of fiduciary duties allegations in "Amended Complaint"
>     functional equivalent to "dishonesty", "[un]trustworthiness", "fraud",
>     "deceit", "criminal act" (theft)]

However, bar prosecutors closed B.D. No. 511-92 (*Richardson/Rankin*) and merged it, with approval of the Board's Contact Member, with B.D. No. 180-94, docketed as a reciprocal disciplinary matter based upon the plaintiff's Florida Supreme Court resignation order granted while disciplinary proceedings were pending for the misconduct of charging an unreasonable fee (a RPC 1.5, Fees violation) and while the plaintiff was suspended from the Florida Bar based upon unrelated misconduct convictions (this latter fact the Board nor the DCCA were advised of by the bar prosecutors). Thus bar prosecutors merged an investigation (B.D. No. 511-92) with four (4) offenses under at least three (3) RPCs -- including, but not limited to: 1.5 (Fees), 1.15 (Safekeeping property), 8.4(b) and (c) (Misconduct involving dishonesty, untrustworthiness, fraud, deceit, and a criminal act) [i.e. charging an unreasonable fee; misappropriation of trust funds; breach of fiduciary obligations (failure to protect trust assets; failure to disclosure material information)] -- into an investigation  (B.D. No. 180-94) with only *one* misconduct -- RPC 1.5 (Fees) -- of charging an unreasonable fee with the approval of the Board's Contact member without notice to the plaintiff of the merger.

After the merger of the 1992 undocketed investigation with *multiple* disciplinary offenses and the 1994 docketed investigation with only *one* disciplinary offense, **the bar prosecutors issued plaintiff a disciplinary letter of inquiry in May 1995 and proceeded to process the investigation as a reciprocal**

**disciplinary matter as if it started in May 1995 with the submission under D.C. Bar R. XI, §11(d) of the resignation order of the Florida Supreme Court.** The submission letter made no disclosures of any other *material* facts such as (1) the merger of two investigations -- an "undocketed" multiple-offense (B.D. #511-92) investigation with a single-offense (B.D. #180-94) "docketed" investigation -- without informing Richardson, the accused attorney, and allowing him to respond,  (2) the current suspension status of Richardson in the Florida Bar flowing from 1990 and 1991 suspension orders already processed by the DCCA in prior reciprocal disciplinary matters (the 1991 case being dismissed), or (3) **the D.C. Bar having no rule governing resignation while under disciplinary investigation without a finding of misconduct.**

Based upon plaintiff's Florida resignation order, bar prosecutors and pursuant to D.C. Bar R. XI, §11(d) permitting temporary revocation of an accused attorney's law license upon presentation of a disciplinary order showing that the attorney had been suspended or disbarred, notified the D.C. Court of Appeals (DCCA) of plaintiff's resignation with an authenticated copy of the resignation order and a proposed interim suspension order. Within 10 days of the transmittal letter, plaintiff filed with the DCCA a Motion for Leave to File Exceptions to Recommendation of Bar Counsel for Temporary Suspension. Bar prosecutors opposed this motion and on June 27, 1995 the DCCA temporarily revoked the plaintiff law license without notice or hearing [*In re Richardson*, A.2d 692:427, *429* (DC, 1997), *cert. den.*, U.S. **522:1118, S.Ct. 118:1056 (1998)** *(1997)* **("On June 27, 1995, (the DCCA) order Richardson's** *temporary suspension* **from the practice of law,** *without a hearing***, pending final disposition of the proceedings...")**]

Obstruction of justice occurred in the denial certain of plaintiff's due process rights under the Board's Rules and the D.C. Bar Rules and  tampering with the evidence in the B.D. No. 511-92 (*Richardson/Rankin*). In the phases of investigating, charging, and prosecuting to obtain interim suspension of the plaintiff's law license, bar prosecutors obstructed justice in the following particulars:

> (1) there was concealment of the existence and contents of B.D. No. 511-92--this denied the plaintiff's due process right to notice of a pending investigation, opportunity to respond to the investigation, and tampered with evidence that should have been available

for use in the interim suspension proceedings and the reciprocal disciplinary proceedings as a whole;

(2) there was a failure open B.D. No. 511-92 as a "docketed" investigation that was clearly mandatory from the language of the Bd. R. 2.3;

(3) there was the unauthorized merger of the two (2) investigations (B.D. Nos. 511-92 and 180-94). They were not authorized because: (a) it was improper to merge the *lesser* single-offense (or misconduct) in B.D. #180-94 into the *greater* multiple-offense in B.D. #511-92 since the proof of elements of the lesser single-offense would not have proved the elements of the greater multiple-offense[9]; and (b) since there is no inherent or statutory authority for bar prosecutors to merge two investigations, the authority would have had to come from either the Board or the DCCA, not a Contact Member of the Board;[171]

(4) there was a failure in these *ex parte* judicial notice-type proceedings by bar prosecutors to provide the Board and the DCCA with a full and complete disclosure of the investigations B.D. Nos. 511-92 and 180-94 thereby interfering with the DCCA's ability to render a judgment revoking the plaintiff's law license temporarily that was independent, complete and informed;

(5) the concealment of B. D. No. 511-92, its records and merger, not only denied the plaintiff to fair consideration under the judicial notice procedures for interim suspension before the DCCA, but also seriously impaired the plaintiff's ability to defend the deprivation of his law license on the two (2) occasions he applied to the DCCA to prevent interim suspension in May 1995 and to terminate interim suspension in August 1995, both applications being denied by the DCCA; and

(6) the concealment and deception interfered with the Board's oversight responsibility in the investigatory and prosecutory aspects of the D.C. bar disciplinary system by misleading the Board's Contact Member and the Board itself by withholding information from it regarding a principal witness' (Atty. Rankin) motives and veracity. The Board cited hearsay evidence of to support its conclusion that plaintiff did charge an unreasonable fee.

Because both the June 1995 and March 1996 interim suspension orders were obtained under circumstances that denied the plaintiff his due process rights, the orders are void. Thus plaintiff's due

---

[9] "A lesser included offense has been variously defined as one for which 'some of the elements of the crime charged themselves constitute a lesser crime', ... and as one 'which consist[s] entirely of some but not all the elements of the greater offense', ... and as 'one which is necessarily established by the proof of the greater offense" [*Hall v. United States*, A.2d 343:35, *38* (1975)].

[171] This was actually done in the underlying reciprocal disciplinary proceedings, for B.D. #180-94, reciprocal discipline for resignation of the Florida Bar based upon Overton Trust fee overcharges, was merged with B.D. #24-96, reciprocal discipline for disbarment by the U.S. District Court for the same offense, which prompted bar prosecutors to see a "fresh" interim suspension order in March 1996 without informing the DCCA of the history of this investigation although by this time bar prosecutors had provided the plaintiff with a copy of the Rankin 1992 and 1994 letters in May 1995 without revealing how they were handled by the bar prosecutors in an "undocketed" disciplinary investigation (B.D. #511-92). See, PX-11 (Transmittal letter to DCCA requesting "fresh" order by DeSilva); PX-12 ["Fresh" interim suspension order (03/12/96). The DCCA ordered "that the Board ... is directed to consider this matter, in conjunction with BDN: 180-94 ...] Plaintiff also filed exceptions to a "fresh" interim suspension order still being ignorant of the undisclosed merger of B.D. #180-84 with B.D. #511-92. Not until *February 2002* was there any disclosure of either the existence or partial contents of B. D. #511-92.

process and fair trial procedures rights in the remaining portion of the reciprocal disciplinary proceedings and in collateral proceedings (for civil and criminal contempt and federal civil and habeas corpus actions) are all void because of the bar prosecutors' obstruction of justice, including the tampering with evidence.

**B.**

The integrity of the bar disciplinary system is of vital importance to the bench, bar, and public. The presentation of false evidence by prosecutors or their concealment of exculpatory evidence clearly undermines this integrity. Justice Brandeis, in the celebrated and often quoted dissenting opinion in *Olmstead v. United States,* U.S. 277:438, S.Ct. 48:564 (1928), made these statements regarding misconduct by government officials:

> *Decency, security and liberty alike demand that government officials shall be subject to the same rules of conduct that are commands to the citizen.* In a government of laws, *existence of the government will be imperiled if it fails to observe the law scrupulously.* Our government is the potent, the omnipresent teacher. For good or for ill, it teaches the whole people by its example. Crime is contagious. *If the government becomes a lawbreaker, it breeds contempt for law;* it invites every man to become a law unto himself; it invites anarchy. *To declare that in the administration of the criminal law the end justifies the means -- to declare that the government may commit crimes in order to secure the conviction of a private criminal -- would bring terrible retribution.* Against that pernicious doctrine this court should resolutely set its face. Id.

A body of legal and ethical rules has developed that imposes on prosecutors a duty to reveal exculpatory evidence and to prohibit the presentation of false evidence. Because of the inequality in resources and the prosecutor's role as the representative of the government, our legal system imposes special responsibilities on the prosecutor. The prosecutor's role as an advocate is tempered by *an obligation of fairness*, a duty to ensure that each trial results in an accurate determination of guilt and punishment.

> *Being a prosecutor is a public trust. "The duty of the prosecutor is to seek justice, not merely to convict."* [*ABA Standards*, The Prosecution Function #3-1(c)] ... And, the proper role of the prosecutor requires that he or she simply not obtain a conviction, but *fairly* obtain a conviction. ... *"[A prosecutor] ... is a servant of the law*, the twofold aim of which is that guilt shall not escape or innocence suffer. He [or she] may prosecute with earnestness and vigor ... . But, while he [or she] may strike hard blows, he [or she] is *not at liberty to strike foul ones.* It is as much his [or her] *duty to refrain from improper methods calculated to produce a wrongful conviction* as it is to use every legitimate means

> to bring about a just one. [*Berger v. United States*, U.S. 295:78, *88*, S.Ct. 55:629 (1935)] Hall, *Professional Responsibility of Criminal Lawyer* §11.1 (2 ed., 1996) [Footnotes omitted.]

At the very core of this duty as a "servant of the law," are the rules requiring a prosecutor to collect, preserve, and disclose investigatory information to an accused, to provide truthful information to the court and the accused, and to assure that the accused received the process that is due under the circumstances of the prosecution.

There are constitutional rules, known collectively as the *Brady*[10] doctrine, based upon the due process clause of the 5th and 14th Amendments that require prosecutors to disclose to the defense exculpatory evidence and to correct false testimony or representations. Under the *Brady* doctrine, reversal of a defendant's conviction is required on finding that the suppressed, falsified and misrepresented evidence was material, irregardless of whether the prosecutor's decision was intentional, deliberate, negligent or passive.

This motion for summary judgment and other relief applies those rules to the bar prosecutors' conduct in the investigation and prosecution of the plaintiff in the underlying reciprocal disciplinary proceeding. Bar disciplinary proceedings are *quasi*-criminal and the D.C. Bar Counsel, unlike a U.S. Attorney who is a member of the Executive Branch of government, *is an employee of the D.C. Court of Appeals (DCCA)*, the agency charged with the responsibility of qualifying and regulating the practice of law in this jurisdiction, and OBC's actions are, under principal-agency theory, *the actions of the DCCA itself* acting in its executive and administrative function of prosecuting bar disciplinary matters.

Ethical standards for lawyers in D.C. Bar have been codified under the D.C. Bar Rules of Professional Conduct (RPC) that form the basis of lawyer regulation in this jurisdiction along with the D.C. Bar Rules and the Rules of the Board on Professional Responsibility [Bd. R.]. These bar rules and regulations, along with other constitutional [e.g. 5th (due process), 6th (right to confrontation), 4th (reasonable search and seizures) Amds.] and the enabling statute, D.C. Code §11-2501 et. seq., define the

---

[10] *Brady v. Maryland*, U.S. 373:83, S.Ct. 83:1194 (1963)

rights and responsibilities of a D.C. attorney and the corresponding duties and responsibilities of the DCCA in its regulatory function.

Bar disciplinary rules governing what can be described as "*Brady*-type" misconduct by prosecutors fall into two categories: (1) In the first are rules that govern the conduct of all lawyers. These include general prohibitions on dishonest activity and specific bands on presenting false testimony. And (2) the second are rules specifically aimed at the prosecutor, rules that require the prosecutor, in contrast to other lawyers, to reveal exculpatory evidence to the opponent. Taken as a whole, the D.C. RPCs provide a comprehensive network of prohibitions that, together with the constitutional standards, outlaw *Brady*-type and other prosecutorial misconduct.

Let us now examine the bar prosecutors conduct in the underlying reciprocal disciplinary stages of investigation and prosecution leading up to and immediately following the temporary revocation of plaintiff's law license "without a hearing" on June 27, 1995 in relationship to the constitutional standards under the 5th and 14th Amendments and the duties imposed under the DCCA's bar disciplinary rules setout in the D.C. Bar Rules and the Board Rules. This examination has revealed that bar prosecutors have violated all of the following duties: (1) under the 5th Amd., U.S. Constitution, to disclose and maintain investigatory information, not to provide false and misleading information, and to assure that the accused attorney due process rights are provided; (2) under the D.C. Bar's disciplinary rules, to disclose and maintain investigatory information; and (3) under the D.C. Bar's code of professional responsibility to disclose investigatory information.

**C.**

**1.** "A lawyer's interest in pursing his calling is protected by the Due Process Clause of the [5[th] and 14[th]] Amendment[s]" [*Leis v. Flynt*, U.S. 439:438, *445*, S.Ct. 99:696, *702* (1979)]. Due process of law "refers to certain fundamental rights which that system of jurisprudence, of which ours is derivative, has always recognized. If any of these are disregarded in the proceedings by which a person is condemned to the loss of life, liberty or *property*, then the deprivation has not be by 'due process of law'" [*In re Bennett*, F. 84:324, *326* (N.D. Ca., 1897) (Internal quotes omitted)]. A "fair trial in a fair tribunal is

a basic requirement of due process" [*Murchinson*].   Decisions -- judgments or orders -- rendered in violation of due process are void in the rendering jurisdiction and elsewhere [*World-Wide Volkswagen Corp. v. Woodson,* U.S. 444:286, *291,* S.Ct 100:559, *564* (1980)].

Long standing Supreme Court due process jurisprudence establishes that whether the deprivation (e.g. license revocation) was itself erroneous is irrelevant in determining whether a due process violation has occurred, for *it is the violation of the due process right that is actionable not the deprivation* of the property interest [*Carey v. Piphus,* U.S. 435:247, *266,* S.Ct. 98:1042, *1053* (1978)].   Justice Powell opined in *Carey* that:

> [p]rocedural due process rules are meant to protect persons not from the deprivation ... of the life, liberty, or property [interest]. ... It is enough to invoke procedural safeguards of the [5th or 14th] Amendment[s] that a significant property interest is at stake, *whatever the ultimate outcome of the hearing... .* [Id., U.S. 435:259, *263, 266,* S.Ct. 98:1050, *1052, 1053* (Internal quotes omitted)].

Thus, it is to assure *fairness in the adjudicatory process* that the due process right  is predicated upon, not the correctness of the result.

**2. Bar prosecutors  have a duty to make timely disclosure to the defense of all evidence  or information known to the prosecutor that tends to negate the guilt of the accused attorney or mitigate the offense, and in connection with imposition of  discipline (sentencing), disclose to the defense and to the tribunal all unprivileged mitigating information known to the prosecutor, except when the prosecutor is relieved of this responsibility by a protective order of the tribunal** [*Brady*; See also, RPC 3.8 incorporating the *Brady* standards].

While a prosecutor has no duty to provide the defendant with unlimited discovery of everything known by the prosecutor, under the *Brady* rule the suppression by the prosecution of evidence favorable to an accused upon request or not violates due process where  evidence is material either to guilt or to punishment, irrespective of the good or bad faith of the prosecutor [*Brady; United States v. Bagley*, U.S. 473:667, S.Ct. 105:3375 (1985); *United States v. Agurs,* U.S. 42:797, S.Ct. 96:2392 (1976); *Kyles v. Whitley,* U.S. 514:419, *423-437,* S.Ct. 115:1555, *1565-1567* (1995)]

Exculpatory evidence may be obviously of such substantial value to the defense that elementary fairness will require that it be disclosed even without the defense making a specific request. *Agurs.* Indeed, for purposes of a defendant's right to a fair trial under the 5th Amendment, *a prosecutor has a constitutional duty to volunteer exculpatory matter to the defense*, although a prosecutor does not violate this duty unless the omission is of sufficient significance to result in *the denial of the defendant's right to a fair trial.* Prudence dictates that the prosecutor disclose in doubtful cases, and

> [t]his is as it should be. Such disclosure will serve to justify trust in the prosecutor as "the representative ... of a sovereignty ... *whose interest ... in criminal prosecution is not that it shall win, but that justice shall be done.*" *Berger v. United States*, [U.S. 295:78, *88*, S.Ct. 55:629 (1935)]. And it will tend to preserve the criminal trial, as distinct from the prosecutor's private deliberations, as the chosen forum for ascertaining the truth about criminal accusations. .... [(This) recogniz(es the) general goal of establishing "procedures under which criminal defendants are 'acquitted or convicted on the basis of all the evidence which exposes the truth' "] ... . *Kyle, supra,* 131 L.Ed.2d at 509-510.

Nondisclosure relates to both documentary and oral or written testimonial evidence. Knowing use of false testimonial evidence is a form of concealment covered by the *Brady* principle, and this includes the knowledge of other prosecutors in the same office or their investigators [*Mooney v. Holohan*, U.S. 294:103, *112*, S.Ct. 55:340, *342* (1935) (A prosecutor's deliberate use of perjured testimony to obtain a conviction violates due process and denies the defendant a fair trial); *Agurs*, U.S. 427:103, S.Ct. 96:*2397* (A prosecutor is required not only to disclose information she knows but also information she "should have known"); *Giglio v. U.S.*, U.S. 405:150, *154*, S.Ct. 92:763, *776* (1972)]. Applying agency principles in *Giglio*, the Supreme Court stated, "The prosecutor's office is an entity and as such it is the spokes(person) for the Government. A promise made by one attorney must be attributed for these [*Brady* nondisclosure of evidence purposes], to the Government.[11]

---

[11] D.C. bar prosecutors are employees of the DCCA and in similar fashion their knowledge, whether revealed or not, is imputed to the DCCA applying similar agency principles. Thus the bar prosecutors' nondisclosure is that of the DCCA and likewise the bar prosecutors' violation of the plaintiff's due process rights is a violation by the DCCA. Taking this reasoning to its logical conclusion: the DCCA, *albeit* unknowingly *in fact* but *in law* construed to have such knowledge under agency principles, in imposing reciprocal discipline, both interim and final, violated the due process rights of the plaintiff. Any

Unknowing use of false testimonial evidence if not corrected when its falsity is discovered also is a violation of the *Brady* principle also [*Alcorta v. Texas*, U.S. 355:28, S.Ct. 78:103 (1957) (Prosecutorial misconduct includes not only a prosecutor's active solicitation of false testimony, but also her failure to correct false testimony); *Napue v. Illinois*, U.S. 360:264, S.Ct. 79:1173 (1959)  (A prosecutor's failure to correct false testimony relating solely to a witness's credibility, rather than the substantive issue, also violates due process)].  In *Napue* the Supreme Court explained that the

> principle that *a State may not knowingly use false evidence, including testimony, to obtain a tainted conviction, implicit in any concept of ordered liberty,* does not cease to apply merely because the false testimony goes to the credibility of the witness.  [For t]he jury [or factfinder's] estimate of the truthfulness and reliability of a given witness may well be determinative of guilt or innocence, and it is upon such subtle factors as the *possible interest of the witness in testifying falsely that a defendant's life or liberty [or deprivation of property] may depend* [Id., U.S. 360:*269*, S.Ct. 79:*1177*].

**3.  Not only is an outright false declaration prohibited, but an omission may be equally as misleading as a false declarative statement.**  Similarly, such a pleading or  submission made in court proceedings can be sanctioned under  Civ. R. 11 of both the D.C. and Federal Rules of procedure.  In *In re Ronco, Inc.*, F.2d 838:212, *218* (7th Cir., 1988), applying this  principle in a Fed. Civ. R. 11 case, the court stated:

> While the appellant did not misstate an empirical fact, it did *omit facts that were highly relevant to an accurate characterization of the facts that were stated.* Such an obvious omission placed a heavy burden on the court. *The presentation amounts in its totality, to a half-truth that can be just as misleading,* sometimes more misleading, than an absolutely false representation.

Thus, there is a violation of  the *Brady* principle if a submission of evidence to a court or one who is owed a duty of disclosure is rendered misleading by virtue of the omission of relevant and unprivileged fact.

Concurring in an evidence suppression case that reversed a felony conviction brought  in habeas corpus proceedings, Judge Hastie -- one of the first Africanic federal judges in the 20th Century -- writing concerning  the obligation of a prosecutor to reveal all information at the prosecutor's disposal whether favorable or not so as to prevent a due process violation, opined:

---

order or judgment rendered in violation of due process is void in the rendering jurisdiction and cannot be given full faith and credit elsewhere [*World-Wide Volkswagen*].

> The matter in controversy is *the extent of the duty of public officers charged with investigation and prosecution of crime when they discover conflicting evidence on a material point.* ... The government ... seem[s] to have believed that once the prosecutor, having examined all the available evidence, is convinced that the truth of an issue lies on one side[,] he is relieved of any obligation to disclose the existence of evidence which in some degree supports what he believes would be a false conclusion. ... It can be said that the prosecutor must not act in an essentially unfair way. ...[T]here are ... circumstances in which a prosecutor must, or certainly should know that even testimony which he honestly disbelieves is of a type or from a source which in all probability would make it very persuasive to a fair minded jury. ... In brief, it is not every case in which the *prosecution must reveal the availability of testimony inconsistent with the government's contentions. But in special circumstances such nondisclosure may ... amount to fundamental unfairness in the trial of a criminal case* [*United States v. Dye,* F.2d 221:763, *769* (3rd Cir., 1955)].

Thus, a prosecutor is not relieved of the duty to disclose evidence "which in some degree support what [she] believes would be a false conclusion" for this "amount[s] to fundamental unfairness in the trial of a criminal [or *quasi*-criminal] case" [*Id.*]. It is the core purpose of the *Brady* principle to assure that an accused gets a 'fair trial in a fair tribunal,' i.e. before a decisionmaker that is fully informed of the facts and the governing legal principles.

## D.

1. There is no denying the fact that bar prosecutors

   (a) violated their duty to disclose the contents of its investigatory file secretly opened as B.D. #511-92 with case name, "*Richardson/Rankin*" when Atty. Rankin filed a complaint with submissions in August 1992 to Ms. Betty Branda, Office of Bar Counsel re "T. Carlton Richardson" (with 53 pages of attachments and later supplemented those 1992 submissions with another submission in May 1994 to Ms. Betty Branda, Office of Bar Counsel re "T. Carlton Richardson" (with 78 pages of attachments)];
   (b) failed to keep those investigatory records in B.D. #511-92 (*Richardson/Rankin*) for future access should that be necessary,
   (c) failed disclose the existence of B.D. #511-92 (*Richardson/Rankin*) until February 5, 2002 although it was opened internally August 24, 1992, some 9 (nine) years, 5 (five) months and 12 (twelve) days previously, and
   (d) failed to *date to* provide the plaintiff a full and complete accounting of the investigatory activities (documents collected, frequency of contacts with Atty. Rankin and others, etc.).
   (e) failed to disclose that B.D. #511-92 based upon *multiple charges* of misconduct (excessive compensation; misappropriation of trust funds for personal benefit; failure to protect and to disclose material information re trust assets) and B.D. #180-94 based upon a *single charge* of misconduct (unreasonable fee charge implied from resignation of Florida Bar while under investigation for that charge without a finding of misconduct) were merged with approval of the Board's Contact Member without obtaining approval by the Board and/or the DCCA.

As is demonstrated below, bar prosecutors actions were in violation of Board Rules and deprived Richardson of certain due process rights. **Thus in two respects, a failure to provide plaintiff with exculpatory investigatory records and to preserve potentially useful investigatory records, bar prosecutors have run afoul of the *Brady* principle.**

2. However, a violation of due process does not occur unless the nondisclosure or suppression (i.e. failure to produce and maintain investigatory records) of the investigatory records  were "*material* either to guilt [or a finding of misconduct] or punishment [the disciplinary sanction imposed or "discipline"], irrespective of the good or bad faith of the prosecution" [*Brady*,   U.S. 378:87]. If the investigatory records are favorable to either a finding of guilt/misconduct or imposition of  a sanction/discipline then a constitutional error has resulted from its suppression by the bar prosecutors, i.e. "if there is a reasonable probability that, had the [investigatory records] been disclosed to the [accused attorney], the result of the proceeding would have been different" [*Bagley*, U.S. 473:*682*].

**In Richardson reciprocal disciplinary (license revocation and civil/criminal contempt) and federal court (civil actions and habeas corpus) proceedings, the suppressed investigatory records consisting of *at least* 131 pages and showed the existence of an unresolved civil litigation regarding the fee received by and the fiduciary mis/malfeasance of  the plaintiff in the Overton Trust settlement** over a period of three years (1987-1990) which his the Florida complainants were alleging. [Of course, one does not know whether there are other exculpatory investigatory records since **the file for B.D. No. 511-92 has never been produced.**] These are the *same* fees that plaintiff was found by use of 'official' and 'judicial' notices  procedures by the Board and DCCA respectively, to have been unreasonable under the ethical standards of  D.C. bar regulations.  But our analysis does not stop here and must proceed further.

3. While the bar prosecutor's constitutional duty has been triggered by the potential impact of the favorable but undisclosed (suppressed) investigatory records, a showing of materiality *does not* require demonstration by a preponderance of the evidence that disclosure of the suppressed records would

have resulted in the accused attorney not being convicted of misconduct. **The test is whether in its absence, the accused attorney received a *fair trial*, i.e. a trial that results in a verdict worthy of confidence.** In other words, a "reasonable probability" of a different result is shown when a prosecutor's suppression "undermines confidence in the outcome of the trial" [*Bagley,* U.S. 473:*678, 682*]. However, in the reciprocal disciplinary proceedings, the plaintiff *never* received written notice or an evidentiary hearing when bar prosecutors obtained an order of interim suspension temporarily revoking plaintiff's license to practice law under D.C. Bar R. XI, 11(d) which provides for summary revocation of an attorney's license to practice law upon the filing with the D.C. Court of Appeals (DCCA) of a authenticated copy of the foreign disciplinary order suspending or disbarring an accused attorney's from the practice of law in the foreign jurisdiction.

Was the nondisclosure material and did the nondisclosure affect the fairness of the "official notice" and "judicial notice" procedures under which the plaintiff's license to practice law was revoked? The answer is yes to both inquires. First, the merger of the B.D. #511-92 (*Richardson/Rankin*: Multiple Charges of Misconduct) with B.D. #180-94 (Single Charge of Misconduct) was improper. B.D. #511-92 (*Richardson/Rankin*) was a domiciliary matter entitling Richardson to an evidentiary hearing and B.D. #180-94 (*Richardson/Bar Counsel*) was a reciprocal disciplinary matter which under current practice (*albeit*, an unconstitutional practice) would not entitle Richardson to an evidentiary hearing was not authorized under the Board Rules or case law governing the merger of lesser offenses into greater offenses. There could not be a merger for both investigations had only one misconduct charge -- charging an unreasonable fee -- in common.

B.D. #511-92 consisted of *multiple* charges of misconduct based upon the allegations relating not only to excessive compensation, but the misappropriation of trust funds for personal gain ('civil theft' Rankin calls it) and other breach of fiduciary duties raising questions of the honesty and trustworthiness of the plaintiff. Merger of offenses requires that the lesser offense (B.D. #180-94) have been merged into the greater offenses (B.D. #511-92). Had that been the case, plaintiff would have received an evidentiary

hearing because B.D. #511-92 was a domiciliary investigation triggered by the "undocketed" Rankin letter of May 1992.

Moreover, since there is no express provision governing merger of investigations, it was necessary for bar prosecutors to obtain, not merely the approval of the Board's Contact Member, but of the Board itself or the D.C. Court of Appeals.  For Board Rules are very specific that each disciplinary complaint is to be assigned a separate and distinct docket number [Bd. R. 2.3].  **However, because of the nondisclosure of the B.D. #511-92 and its merger, Richardson was unable to make that argument to the DCCA when it considered the bar prosecutors'** *ex parte* **submissions in support of the revocation of his law license temporarily on no less that two occasions, in June 1995 and March 1996.**  Because no hearing was accorded the plaintiff prior to or promptly following the temporary revocation of his law license in June 1995, there was never any opportunity to discover the information that surfaced in 2003, some 7 years after interim suspension and  6 years after final suspension.

**4.**  Second, concealment  benefited the bar prosecutors for it permitted them to take the reciprocal disciplinary route unchallenged because:

> (a) they would not have the burden of proof of misconduct by clear and convincing evidence, the burden of proof would be on the plaintiff to disprove misconduct by clear and convincing evidence;
> (b) proof would be in "official notice" proceedings by unproved and hearsay paper filings with the Board, as opposed to a full disciplinary trial-type proceeding before a hearing committee as occurred in these reinstatement proceedings that yielded -- *albeit* after much coercion by the Hearing Committee #2 and closure of the hearing,  investigatory records that were undisclosed raising, as has been previously discussed, obstruction of justice charges against the bar prosecutors; and
> (c) bar prosecutors would have to defend on one charge of an unreasonable fee instead of having to prosecute multiple charges of disciplinary infractions dealing with not only proving an unreasonable fee, but also the violations of fiduciary responsibilities with complainants that were in Florida.

Moreover, bar prosecutors had a *weak* case, with credible defenses by the plaintiff, and  a plaintiff -- a former law professor -- who was a ***formidable*** opponent.  So it would behoove them to take away the plaintiff's earning capacity in order to weaken his defenses and then take away the ability to try the case before a hearing panel which would **take away the ability to conduct discovery and challenge bar prosecutors' documentary and testimonial evidence**.

Once the *Richardson/Rankin* investigation (B.D. No. 511-92) was opened, the plaintiff's right to respond and be prosecuted based upon that Rankin letter complaint was *vested* and could not be *divested* by any action of bar prosecutors in merging B.D. No. 511-92 (*Richardson/Rankin*: Fee complaint based upon violation multiple disciplinary rules) with B.D. No. 180-94 (*Richardson/Bar Counsel*: Reciprocal Discipline violation of a single disciplinary rule). While they arise out of the same facts, they would be governed by different procedural and evidentiary rules. For example, in No. 511-92 bar prosecutors must prove misconduct by clear and convincing evidence *within an evidentiary hearing*, while in No. 180-94 plaintiff must overcome a presumption of collateral estoppel that the misconduct exists by clear and convincing evidence under one or more of the exceptions in the bar disciplinary rules *without an evidentiary hearing* under 'official notice' procedures before the Board.

5. **Plaintiff's ability to prepare and present his case was and has been adversely affected not only in the reciprocal disciplinary proceedings, by in collateral challenges both with the local and federal court systems.** Because plaintiff had no knowledge that another investigation had been secretly opened in 1992 (B.D. No. 511-92) and closed by merger in 1994 (B.D. No. 180-94), he was unable to argue before the DCCA that his due process rights would be violated if summary revocation was effectuated because (1) the merger was improper and (2) that in the investigatory phase plaintiff was denied an opportunity to respond in the 1992 *Richardson/Rankin* investigation and that his right to a hearing based upon the *Richardson/Rankin* B.D. No. 511-92 could not be divested by Office of Bar Counsel's prosecution tactic of merging the two investigations and proceeding to prosecute the disciplinary matter under a current reciprocal disciplinary procedure that made their job easy, i.e. they did not have to prove misconduct by clear and convincing evidence but only defend the misconduct under the doctrine of collateral estoppel with plaintiff having the burden of disproving misconduct by clear and convincing evidence.

In its submission to the DCCA bar prosecutors made no mention of the fact (1) of the initial client complaint (B.D. No. 511-92, *Richardson/Rankin*) based upon the existing civil litigation for violation of Florida trust administration law over the issue of the disputed fees and fiduciary misfeasance, nor (2) did

bar prosecutors inform the DCCA that *plaintiff was already under suspension* in Florida based upon prior disciplinary actions by the Florida Supreme Court that had been resolved in D.C. reciprocal disciplinary case and the effect of the Florida resignation order was not a suspension or disbarment order, for the plaintiff was *already under suspension* by the Florida court at the time of plaintiff's resignation. Thus the Florida resignation order was neither a suspension nor a disbarment order.

6. **There is no D.C. Bar Rule governing resignation without an admission of misconduct while under disciplinary investigation in a foreign jurisdiction.** Bar prosecutors were under a legal and ethical duty to disclose to the DCCA (1) the existence of the 1992 client investigation (B.D. No. 511-92, *Richardson/Rankin*) and its disposition by the bar prosecutors and (2) the fact that the *plaintiff was currently suspended in Florida* and that the practical effect of his resignation did not change that status and that this was not a *new* order imposing a suspension for 3-years, among other matters. Apparently bar prosecutors were under the impression that they were required only to submit the Florida resignation and stand silent as to any mitigating factors, *e.g.* (1) that the D.C. Bar has no rule governing resignation without an admission of misconduct while under disciplinary investigation, (2) that plaintiff was suspended in Florida at the time prosecutors submitted the Florida resignation order, and (3) that bar prosecutors had terminated an original complaint investigation raising multiple disciplinary offenses by plaintiff's client (B.D. No. 511-92, *Richardson/Rankin*) arising out of the same facts that prompted the plaintiff to seek permission to resign the Florida Bar into which it was merged with a later single-offense reciprocal disciplinary investigation (B.D. No. 180-94, *Richardson/Bar Counsel*) without notice to the plaintiff and an opportunity to respond to the 1992 investigation or the later merger.

The merger of the 1992 multiple charge investigation with the 1994 single charge investigation effectively denied the plaintiff a right to an evidentiary hearing (which was a *vested* right under the 1992 investigation that could not be *divested* by bar prosecutors through a unauthorized procedural move of merger). As contrasted with no right to an evidentiary hearing in B.D. #180-94, which exists under present reciprocal bar disciplinary procedures, although patently unconstitutional.

7. Because D.C. Bar R. XI, §11(d) operates under "judicial notice" procedures with *ex parte* submissions by the bar prosecutors -- similar to how prosecutors present information to a grand jury --, it is clear that unless bar prosecutors had revealed the information to the DCCA, the DCCA would not know the information. Thus, bar prosecutors were obligated to provide the DCCA with that additional information and not merely to submit a copy of the Florida resignation order and a proposed order for interim suspension, and **make a *partial* statement of the underlying facts that constituted false and misleading statements by omissions in June 1995 submissions for the plaintiff's interim summary revocation of his law license without a hearing under "official notice" procedures.** This was likewise the case in March 1996 when bar prosecutors sought a "fresh" interim suspension revocation order.

Being apprised of this additional information, the DCCA may have opted not to impose interim suspension and directed the bar prosecutors to file charges as a domiciliary matter in this jurisdiction under B.D. No. 511-92 (*Richardson/Rankin*), direct the plaintiff to enter into mandatory arbitration of the fee dispute issue, or direct bar prosecutors to consider having plaintiff enter an diversion program. It is objectively reasonable that the DCCA may have made another disposition of the matter instead of summarily revoking the plaintiff's license without notice or opportunity to be heard as it did: "On June 27, 1995, [the DCCA] ordered Richardson's temporary suspension from the practice of law, *without a hearing,* pending final disposition of the proceeding" *Richardson (1997), 429.* Moreover, **because the plaintiff had no knowledge of the existence of the 1992 investigation, he could not have made the argument to the DCCA that this should be treated as an domiciliary matter under B. D. #511-92 with an entitlement to evidentiary hearing with no loss of his license to practice in the interim.**

However, bar prosecutors proceeded as if it were solely a reciprocal disciplinary matter under B.D. #180-94 (*Richardson/Bar Counsel*) involving only a single disciplinary offense and obtained plaintiff's summary temporary suspension on two occasions in June 1995 (with two challenges to get it reversed) and March 1996 (one challenge to avoid imposition). **There is no authority under the D.C. Bar or Board Rules for bar prosecutors to "merge" one investigation with another without the**

approval of the DCCA, and a Board contact member has no such authority except to authorize "dismissal" a complaint.

Furthermore, had the Board known of the existence of the 1992 *Richardson/Rankin* investigation when it conducted its 'official notice' proceedings and made its finding of misconduct and recommended sanction of 3-years, the Board would surely have been influenced by the fact **that it had relied upon hearsay evidence by the self-same attorney Rankin who was prosecuting a civil action against the plaintiff regarding the valuation of the fees charged in the case and other unethical conduct ["civil theft", "breach of fiduciary duties"], that plaintiff had no notice or opportunity to be heard in the 1992 investigation because he was never informed of its existence or contents, and that plaintiff had no opportunity to challenge the merger of the 1992 multiple charge investigation with the 1994 single charge investigation before his law license was summarily revoked by the DCCA "without a hearing."** And  the investigatory records of the 1992 *Richardson/Rankin* investigation may well have impacted upon the Board's decision regarding a recommended  finding of guilt and severity of the sanction.

By withholding the information and investigatory records, bar prosecutors effectively controlled the nature and extent of the information that the DCCA and Board would receive on the misconduct and sanction issues. And bar prosecutors were thereby assured that their positions on summary revocation of plaintiff's license, a finding of misconduct and imposition of 3-year plus (now more than 14 years) would win out. While the plaintiff's due process rights and property in his law license were deprived, even plaintiff's liberty was affected in the long run by concealment, having been convicted of criminal contempt for violating the June 1995 interim suspension order.

**8.**  Bearing in mind the fact that bar disciplinary matters are *quasi*-criminal, bar prosecutors in plaintiff's reciprocal disciplinary case had an affirmative obligation to inform the DCCA and this Board of facts that were inconsistent with the bar prosecutors' position (which the DCCA later adopted although

there was no *existing* D.C. Bar Rule to that effect a clear violation of imposing an *ex post facto law[12]*)

that a bar resignation without a finding of misconduct is the functional-equivalent of a suspension or

disbarment for which the DCCA can summarily revoke an attorney's license to practice without notice or

hearing under judicial notice proceedings as provided in D.C. Bar R. XI, 11(d)  And the **lack of an**

**existing D.C. Bar Rule governing resignations while under disciplinary investigations** caused the

DCCA to have to imply through 'judicial notice' proceedings that the plaintiff had waived his rights to

due process in the District of Columbia and thus his license could be revoked temporarily and finally

without notice or an opportunity to be heard.[13]

So finally we see the results of what happens when bar prosecutors nondisclosures to the plaintiff

and the DCCA were made in  reciprocal disciplinary proceedings that revokes an accused attorney's

license temporarily and finally "without a hearing" upon the *ex parte* presentation of an order showing

---

[12] The terms of a penal statute must be sufficiently explicit as to conduct prohibited and its penalties [ *Connally v. General Const. Co.*, U.S. 269:385, *391*, S.Ct. 46:126 (1926)]. Due process prohibits courts from interpreting existing laws in an unforeseeable or unintended manner [*Sheriff v. Encoe*, P.2d 855:596, *598* (Nev., 1994)]. In *Zauderer v. Ofc. of Disciplinary Counsel, Supreme Court of Ohio*, the U.S. Supreme Court held that a regulation that either forbids or requires the doing of an act in terms so vague that men of common intelligence differ as to its application, violates the first essential of due process of law, adequate notice [Id., U.S. 471:626, *665-666*, S.Ct. 105:2265, *2289-2290* (1985)].  This states  a part of what is known as the "vagueness doctrine" whose purpose is to discourage the arbitrary and discriminatory enforcement by the government of the law because a "vague law impermissibly delegates basic policy matters to policemen, judges and juries for resolution on an *ad hoc* and subjective basis" [*Grayned v. City of Rockford*, U.S. 408:104, S.Ct. 92:2294 (1972)].

[13] Insufficient proof of any element of a disciplinary offense violates due process [*Jackson v. Virginia*, U.S. 443:307, S.Ct. 99:2781 (1979)], whether related to proof of the offense itself or the penalty imposed. *In re Winship*, U.S. 397:358, S.Ct. 94:1068 (1970); *Apprendi v. New Jersey*, U.S. 530:466, S.Ct. 120:2348 (2000); *Jackson*]. It is unconstitutional to establish a fact by judicial notice without according the affected parties an opportunity to be heard. The U.S. Supreme Court has stated that there is a constitutional right to be heard when a court is going to take judicial notice [*Garner v. Louisiana*, U.S. 368:157, S.Ct. 82:248 (1961)].  In *Garner*, Chief Justice Warren writing for a unanimous Court  (Justice Frankfurter concurring in the judgment) stated: "To ... allow the prosecution *to do through argument to* this Court what it is required by due process *to do at the trial*, and would be "to turn the doctrine [of judicial notice] into a pretext for dispensing with a trial". ...  Furthermore, unless an accused is *informed at the trial of the facts* of which the court is taking judicial notice, not only does *he not know* upon what evidence he is being convicted, but, in addition, he is *deprived of any opportunity to challenge the deductions drawn* from such notice *or to dispute the notoriety or truth of the facts allegedly relied upon*. Moreover, there is no way by which an appellate court may review the facts and law of  a case and intelligently decide whether the findings of the lower court are supported by the evidence where the *evidence is unknown*. Such an assumption would be *a denial of due process"*  [Id., U.S. 368:*173*, S.Ct. 82:*256-257*].

that the attorney was suspended or disbarred elsewhere [D.C. Bar R. XI, §11(d)]. **Rule XI, §11(d) is unconstitutional on its face and as applied for it violates the cardinal rule of our democratic form of government that one cannot be deprived of his property by the government without according the property owner due process of law whose essentials are notice and opportunity to be heard *before* the deprivation occurs.**

9. Prosecutors are acknowledged to have broad discretion in determining against whom to bring what charges [*Bordenkircher v. Hayes*, U.S. 434:357, *364*, S.Ct. 98:663 (1978) *reh'g den*. ("A charging decision does not levy an improper 'penalty' unless it results solely from the defendant's exercise of a protected right, rather than the prosecutor's normal assessment of the societal interest in prosecution"); *United States v. Goodwin*, U.S. 457:368, *380*, S.Ct. 102:2485 (1982)]. According to the standards setout in Board R. 2.3 and D.C. Bar R. 6(a)(2) the 1992 Rankin letter with its 53 (fifty-three) pages of attachments, including a civil complaint for refund of excess fees from a trust estate and removal as trustee wherein it is alleged that Richardson "acted wrongfully … *without any claims to those funds*," and that the "sum far exceeds any reasonable fee for the services rendered," and that plaintiff should be "remov(ed) …as trustee," by any objectively applied the Board R. 2.3 standard, probable cause for a multiple-offense disciplinary complaint was made by Atty. Rankin.

**Plaintiff had a due process or "protected legal right" to be heard in response to the multiple-offense disciplinary complaint submitted in letter form by Atty. Rankin which the bar prosecutors' determined that there was no probable cause and that this was "not a complaint" thereby violating the plaintiff's due process rights to notice and opportunity to be heard at the crucial investigatory stage** in the D.C. Bar disciplinary system. While plaintiff need not show prejudice, for the showing of prejudice is not the standard of review in cases where there is a violation of due process. **Such violation *presumptively* constitutes an obstruction of justice for the rights of the plaintiff were inferred with or "obstructed."** Moreover, the U.S. Supreme Court has held that a showing of prejudice is not required.

In *Fuentes v. Shevin*, a case declaring unconstitutional several States' replevin statutes that

allowed prejudgment replevin of property without procedural due process being accorded the person in possession, responding to the argument by the States that the property could "later be returned to the" owner and "[d]amages ... be awarded", Justice Stewart, writing for the Court stated:

> **If the right to notice and hearing is to serve it full purpose, then, it is clear that *it must be granted at a time when the deprivation can still be prevented.* ...** [N]o later hearing and do damage award can undo the fact that the arbitrary taking that was subject to the right of procedural due process has already occurred. *"This Court has not ... embraced the general proposition that a wrong may be done if it can be undone"* [Id., U.S. 407:67, *81-82,* S.Ct. 92:1983, *1994-1995* (1972)].

**Except under "extraordinary circumstances,"** *even where there has been a waiver of the due process rights* **(as was the case under the replevin contracts under review in** *Fuentes***), the right to a hearing** *before* **deprivation of a property interest is** *mandatory.* Justice Stewart further proclaimed the law governing the right to due process *before* being deprived of a property right *even if there has been a waiver:*

> This is no new principle of constitutional law. The *right to a prior hearing has long been recognized by this Court under the [14th] and [5th] Amendments.* Although the Court has held that due process tolerates variances in the *form* [*emphasis* in original] of the hearing 'appropriate to the nature of the case,' .... and 'depending upon the importance of the interests involved and the nature of the subsequent proceedings [if any],' ... **the Court has traditionally insisted that, whatever its form, opportunity for that hearing must be provided** *before* **the deprivation at issue takes place. ...** *'That the hearing required by due process is* <u>subject</u> *to waiver, and is not fixed in form <u>does</u> <u>not</u> <u>affect</u> its root requirement that an individual be given an opportunity for a hearing <u>before</u> [emphasis in original] he is deprived of any significant property interest,* except for extraordinary situations where some valid governmental interest is at stake that justifies postponing the hearing until after the event' [*Fuentes,* U.S. 407:*82,* S.Ct. 92:1995 (Ten (10) citations omitted)].

Bar prosecutors failure to find probable cause, docket the disciplinary complaint, open an investigation, and notify the plaintiff and permit him to respond when the 1992 Rankin letter came in with its 53 (fifty-three) pages of attachments cannot be justified.

Even if bar prosecutors were to speciously argue that Richardson waived his right to notice and hearing when they sought the interim suspension orders in June 1995 and March 1996 by petitioning to resign the Florida Bar as was the ruling of the DCCA in *Richardson (1997),* 433-444  it would not justify

bar prosecutors' failure to provide the plaintiff his due process rights under the D.C. Bar and Board Rules governing investigatory activities in bar disciplinary matters for the fact

> [t]hat the *hearing required by due process is subject to waiver … does not affect its root requirement* that an individual be given an opportunity for a hearing *before* [*emphasis* in original] *he is deprived of any significant property interest* … [*Fuentes* (Internal quotes omitted)].

**Bar prosecutors violated the plaintiff's right to due process when they did not open a "docketed" non-secret investigation based upon the 1992 Rankin letter and its 53 pages of attachments alleging multiple-disciplinary offenses.** And there was no justification that vitiates the denial of the plaintiff's due process rights to notice and opportunity to respond, even if *arguendo* it is assumed that plaintiff waived *all* due process rights from whatever source (Federal constitutional, D.C. statutory, D.C. Bar rules and regulations, or case law) at every stage (preliminary interim suspension, investigatory, or adjudicatory) the D.C. disciplinary system, plaintiff still has a right to notice and hearing under these circumstances.

    **10. Moreover, the merger of B.D. No. 511-92 (*Richardson/Rankin*) with B.D. No. 180-94 (*Richardson/Bar Counsel*) is not authorized by any express provision of the D.C. Bar or Board Rules.** That being the case, the proper procedural step would be either to apply to the Board or directly to the DCCA for permission to consolidate the two investigations. Of course, had that been done, the plaintiff would have had to be notified and would have discovered the existence of the 1992 "undocketed" investigation. Instead, bar prosecutors secretly merged the "undocketed" 1992 *Richardson/Rankin* investigation with the "docketed" 1994 *Richardson/Bar Counsel* investigation by obtaining the permission of the Board's contact person without giving notice to the plaintiff that these two investigations were being merged.

    Even as late as May 1995, had plaintiff been notified, he would be alerted to the violations of his due process rights and it is assured that he would have taken affirmative actions to protect his property interest in the D.C. license to practice law. For Richardson filed exceptions to the bar prosecutors' submissions for interim suspension in May 1995 and later filed a motion to terminate interim suspension

in August 1995. However, **bar prosecutors stood *deceptively* silent and conducted an unauthorized "merger" of investigations that was (and is) not permitted in the D.C. disciplinary system without DCCA or Board approval, and without notice and opportunity given to the plaintiff for an opportunity to respond.**

Bar prosecutors' actions were clearly deceptive for they have an affirmative duty to disclose material facts and legal authorities that with "reasonable probability" will insure a fair and just outcome in the reciprocal disciplinary proceedings. It is as much the bar prosecutors' duty to see that an accused attorney *is not* deprived of any of the attorney's statutory or constitutional rights as it is to prosecute the accused attorney. That duty is to *timely* make full and complete disclosure of all investigatory records and information known to the bar prosecutors that tend to negate the guilt of an accused attorney or   in conjunction with the imposition of a penalty or discipline, to disclose to the accused attorney, the Board, and the DCCA, all unprivileged evidence  known to the bar prosecutors, except when prosecutors are relieved of this responsibility by a protective order of the Board or DCCA.

11. Furthermore, **bar prosecutors stand in violation of their duty to disclose not only if they suppress investigatory records, but if they fail to disclose legal authority governing the administration of justice in the bar disciplinary system** that conflicts with D.C. statutory and Federal constitutional requirements and case law that guarantees certain procedural and substantive due process rights to an accused attorney. Thus in summarizing the facts of these reciprocal disciplinary proceedings, bar prosecutors have violated their  duty of full disclosure  in several regards:

> (1) Failed to disclose the existence of a 1992 investigation based upon a complaint by the plaintiff's former clients' attorney alleging the charging of excess compensation, misappropriation of client funds held in trust, and other breaches of his fiduciary duty that was also the subject of a collateral civil action by the client;
> (2) Failed to disclose that the 1992 multiple-offense investigation was merged into a 1994 single-offense investigation based upon the plaintiff's resignation of the Florida Bar while a disciplinary investigation was pending against him, that was in turn based upon a similar complaint filed by the former clients' attorney with the Florida Bar and also the subject of a collateral civil action;
> (3) Submitted  to the D.C. Court of Appeals pursuant to D.C. Bar R. XI, §11(d) a paper that failed to disclose (a) the existence of the 1992 investigation [B.D.   #511-92, *Richardson/Rankin,* a domiciliary complaint entitling the plaintiff to an evidentiary hearing, diversion, or arbitration],   (b) the merger of the 1992 multiple-offense

investigation into the 1994 [B.D. No. 180-94, *Richardson/Bar Counsel* -- Reciprocal Discipline] single-offense investigation without according the plaintiff an opportunity to respond to the 1992 multiple-offense investigation or oppose the merger;

(4) Failed to disclose to the DCCA that the effect of the merger was to deny under existing custom the plaintiff a right to an evidentiary hearing on the non-fee related allegation of misconduct (i.e. misappropriation of client trust funds; breach of fiduciary duties) because none is allowed in reciprocal disciplinary matters; and to switch the burden of proof on the issue of misconduct from the bar prosecutors to the plaintiff as to those non-fee related misconduct allegations;

(5) Failed to find probable cause to open an investigation based upon the 1992 Rankin letter under the standards listed in Board R. 2.3 (Preliminary Screening of Complaints) thereby violating the plaintiff's due process rights in making an improper charging decision and denying plaintiff's right to notice and to respond.

As a result of these deceptive nondisclosures or prosecutorial 'indiscretions,' which included not only the suppression of investigatory records and the disclosure only when compelled to produce the documents by Hearing Committee #2 of the Board of Professional Responsibility in February 2003 during Richardson unsuccessful reinstatement attempt, but also false statements by giving half-truths and omissions, the plaintiff was summarily suspended from the practice of law in the District of Columbia by the DCCA "without a hearing" in June 1995 and suffered other adverse consequences depriving the plaintiff of liberty and property interests for a period of over 14 (fourteen) years and counting.■

## 4.0 CONCLUSION & RELIEF REQUESTED

From the foregoing is evident that there has been a miscarriage of justice. Plaintiff has been wrongfully convicted of misconduct under facts and procedures that show the involvement of bar prosecutors in the obstruction of justice by concealment and omission of relevant and material information and documentation to which the plaintiff, the Board and the D.C. and federal courts were entitled. And nondisclosure or suppression of evidence since 1992 with intervening proceedings collateral to or related to the reciprocal disciplinary proceedings for civil and criminal contempt, for violation of civil rights and injunctive relief in federal and D.C. courts arising out of and related to the investigatory, prosecutory and adjudicatory irregularities in the reciprocal disciplinary proceedings, and for federal habeas corpus proceedings for post-judgment relief, which **required bar prosecutors to reveal the existence of the concealed disciplinary investigation (*Richardson/Rankin*) and the suppressed**

evidence for a full and fair consideration of the merits of those related but independent judicial proceedings.

Thus, the obstruction of justice was not merely to the disciplinary system, but to the criminal and civil justice systems of the federal and D.C. courts. This is a classic case that cries out for the grant of summary judgment, citation for contempt of the DCCA's federal court counsel (the D.C. Office of Attorney General), and referral to the U.S. Attorney's office for prosecution of the obstruction of justice allegations.

## 5.0  VERIFICATION

Under penalty of perjury, the undersigned plaintiff, T. Carlton Richardson, certifies that facts stated in this document are true to the best of his knowledge, information and belief.

## 6.0  CERTIFICATE OF SERVICE

This certifies that a copy of the foregoing document was delivered by U.S. Mail (1st Class) to:

| HON. PETER J. NICKLES, D.C. Attorney General (DCAG); GEORGE C. VALENTINE, Deputy DCAG; ELLEN EFROS, Asst. Deputy DCAG; LEAH TAYLOR, Asst. Deputy DCAG 441-4th Street NW, 6th Flr. So. Washington, DC 20001 | DR. TIMOTHY K. WEBSTER, ESQ. SIDLEY AUSTIN LLP 1505 "K" Street, NW Washington, DC 20005 |
|---|---|

on this _17th_ day of November 2009.

DR. T. CARLTON RICHARDSON, J.D., LL.M., M.The.S.
**Plaintiff *Pro Se***
1505 Pennsylvania Avenue, SE
Washington, DC 20003-3117
202-546-3505

## APPENDIX "A"

# STATEMENT OF UNDISPUTED FACTS
# (EXCERPTS FROM COMPLAINT, ¶¶9-42)

### IV. SUMMARY OF CLAIMS AND BASIC FACTS

A. CLAIMS

9.  (a) Plaintiff Richardson states claims at common law and under the U.S. Constitution and Federal Civil Rights Act (U.S.C. §42:1983) for the wrongful suspension of Richardson's license to practice law. (b) Those claims consist of Federal constitutional, D.C. statutory and common law tortuous, criminal, unethical[14] and immoral conduct by the defendants and other unknown persons directly and conspiratorially. (c) Events giving rise to these claims principally occurred between 1992 and 2003, but some improper conduct continues today, e.g. concealment of investigatory records and identities of principal operatives involved.

10.  (a) All claims arise out of the wrongful revocation of Richardson's law license involving the nondisclosure and concealment of illegal disciplinary investigations and use of judicial or notice adjudicatory procedures that did not accord Richardson certain minimal due process and fair trial protections guaranteed under the U.S. Constitution, federal and D.C. laws. (b) Those investigatory and adjudicatory improprieties involved the denial of certain due process (under 5th Amd. generally— adequate notice and prior evidentiary hearing) and fair trial procedures [under 6th Amd. (to confrontation), 4th Amd. (to reasonable search and seizure), 5th Amd. (to equal treatment in reciprocal and domiciliary suspension proceedings), 8th Amd. (to proportionality in discipline) rights in reciprocal and related disciplinary procedures brought against the plaintiff.

B. BASIC FACTS

11.  Under Supreme Court due process jurisprudence applicable to the 5th Amd., the government cannot deprive a citizen of 'life, liberty or property' except by due process of law, which at minimum requires the government to provide adequate notice and an evidentiary hearing, at a meaningful time and under meaningful circumstances. Richardson has a liberty and property interest in his license to practice law and therefore was due notice and an opportunity to be heard prior to the revocation of his license to practice law in June 1995, which was not accorded him. Moreover, mandated by D.C. statutes governing administrative procedures generally involving license revocations (cf. D.C. Code §2-509) and attorney suspensions [cf. D.C. Code §11-2503(b)] and D.C. Bar rules according a right to notice of and to respond to a disciplinary complaint submitted from any source against an attorney when an investigation is commenced and processed by bar prosecutors.

12.  In plaintiff Richardson's situation that gives rise to this complaint, allegations of misconduct were made against Richardson in an August 1992 letter to defendant Branda (Asst. Bar Counsel) by a complainant, a Florida attorney, David P. Rankin, Esq., who represented plaintiffs, beneficiaries and co-trustees of a private trust settled and administered in Florida, in a lawsuit against Richardson filed in 1990 alleging that Richardson charged an unreasonable fee to the trust and otherwise breached his fiduciary duties as a chief trustee, i.e. mismanaged trust assets and misappropriated trust funds. Rankin's complaint was stated in a letter with attachments.

13.  (a) These 1992 allegations were determined by defendant Branda not to constitute probable cause for opening ('docketing') a bar disciplinary investigation and was assigned a case ["BD"=Bar Docket] number, i.e. *Richardson/Rankin,* BD No. 511-92, and closed without informing the Richardson that the misconduct complaint by Rankin existed. (b) However, between 1992 and 1994 defendant Branda continued to collect materials in support of the 1992 allegations *(Richardson/Rankin)* of this

---

[14] See, e.g. D.C. Bar Rule (*Fairness to Opposing Party and Counsel*) 3.4 (a), (c) and (d) dealing generally with obstruction of access to, concealment or nondisclosure of evidence, and failure provide discovery.

'undocketed' complaint. (c) Then in April 1994, defendant Branda commenced a 'docketed' investigation *(Richardson/Bar Counsel,*   BD No. 180-94) based on the 1992 allegations *(Richardson/Rankin)* of misconduct against Richardson of charging an unreasonable fee. (d) The 1994 'docketed' investigation *(Richardson/Bar Counsel)* was based *solely* upon an August 1992 resignation order of the Florida Supreme Court granting Richardson's uncontested petition to resign the Florida Bar while disciplinary investigations were pending, collected during the 1992-1994 *undocketed* investigation, *Richardson/Rankin.*

14. (a) The Florida resignation proceedings arose out of the same allegations filed by the same complainant (Atty. Rankin) with the Florida Bar in 1990 as those filed in the 1992 'undocketed' investigation *(Richardson/Rankin)* the D.C. Office of Bar Counsel. (b) In other words, both the Florida and D.C. disciplinary complaints of misconduct were based upon the same allegations and documentary evidence and submitted by the same complainant, Florida attorney Rankin, as a part of Atty. Rankin's fee refund collection litigation strategy.

15. (a) In April 1994, contemporaneously with the opening of *Richardson/Bar Counsel,* bar prosecutors, in cooperation with and after the approval of an unidentified "contact member" of the Board assigned to oversee the 'undocketed' investigation *(Richardson/Rankin)*, merged the 1992 'undocketed' investigation *(Richardson/Rankin)* with the new 1994 'docketed' investigation *(Richardson/Bar Counsel)*, without notifying Richardson of this merger transaction either.

16. Thereafter, by a disciplinary letter of inquiry in April 1994, Office of D.C. Bar Counsel by its prosecutor, defendant Branda, notified the plaintiff of the 1994 'docketed' investigation *(Richardson/Bar Counsel)* without disclosing any reference [a] to the 1992 'undocketed' investigation *(Richardson/Rankin)* and its merger with the 1994 'docketed' investigation *(Richardson/Bar Counsel)*, nor [b] to the existence of documents collected between 1992 and 1994 from Florida attorney Rankin.

17. (a) In May 1995 after receiving the plaintiff's reply that month to the notice of misconduct charges in the April 1994 'disciplinary letter of inquiry' based *solely* upon the August 1992 Florida resignation order, the defendant Office of D.C. Bar Counsel by chief prosecutor and Bar Counsel at the time, defendant Leonard Becker, Esq., notified the defendant DCCA that Richardson had resigned the Florida Bar while being investigated for misconduct and requested that he be temporarily suspended (although there was no D.C. Bar Rule governing such a situation) without notice or opportunity to be heard *prior to* interim suspension. (b) Under D.C. Bar Rule XI, §11(d) , in reciprocal disciplinary matters, interim suspension is effectuated through an *ex parte* judicial notice procedure without according an accused attorney notice or opportunity to be heard.

18. This action was taken by bar prosecutors without informing Richardson nor the DCCA of the 1992 'undocketed' investigation *(Richardson/Rankin)* and its merger into the 1994 'docketed investigation' *(Richardson/Bar Counsel)* and with full knowledge that the alleged unreasonableness of the fee charged and other fiduciary improprieties alleged by complainant Rankin that formed the basis of the Florida civil action against Richardson and Rankin's complaint before the Florida (in 1990) and D.C. Bars (in 1992) were unproven and that resignation of a foreign bar membership while under disciplinary investigation in the foreign jurisdiction where there has been no finding or admission of misconduct on the part of the accused attorney (plaintiff in this instance), is not grounds of misconduct under the D.C. Bar Rules.

19. (a) Not until *February 2003* after the close of an evidentiary hearing before a hearing committee of the Board in Richardson's 2001 reinstatement proceedings did Richardson discover the existence of the 1992 'undocketed' investigation *(Richardson/Rankin)* and its merger with the 1994 'docketed' investigation *(Richardson/Bar Counsel)* that resulted in Richardson suffering interim suspensions in June 1995 and March 1996 and a final suspension in April 1997. (b) All three (3) suspensions were effectuated without notice and an evidentiary hearing as required by the due process clause of the 5th Amendment of the U.S. Constitution and D.C. Code provisions governing the regulation of the practice of law [§11-2503(b) (2001)], administrative procedures [§2-509 (2001)], and evidentiary procedures [§14-101(a) (2001)].

20. (a) Discovery of the contents of the records of the 1992-1994 'undocketed' investigation *(Richardson/Rankin)* and the bar prosecutors and Board member(s) involved have *never* been provided Richardson although demanded to date. (b) Nor has the defendant DCCA allowed an evidentiary hearing on the due process, equal protection, and other constitutional claims under the circumstances made by Richardson in any disciplinary, reinstatement, or other post-judgment *(coram nobis)* proceeding.

21. In addition to the prosecutorial misconduct of a criminal, unethical and tortuous (constitutional or local common law based) nature, involving the obstruction of justice that resulted from [a] the nondisclosure and concealment of the 1992-1994 'undocketed' investigation *(Richardson/Rankin)* and [b] the denial of notice and an evidentiary hearing *prior to* the June 1995 and March 1996 interim and the April 1997 final suspension, the plaintiff suffered [c] the imposition of disproportionate suspension penalties and [d] was convicted of civil and criminal contempt based upon illegally seized bank records and subpoenas issued by bar prosecutors without prior judicial review.

22. (a) The disproportionate suspensions involved [1] a period of 1-year and 10-months (June 1995 - April 1997) for noncompliance with a D.C. Bar Rule requiring a suspended attorney to file a registration statement, and [2] for resignation of the Florida Bar while under disciplinary investigation a period of 3-years initially which has continued now to more than 12+ years (April 1997 to date and continuing), for a total suspension period of 14+ years (June 1995 to date). (b) The penalty for noncompliance was also effectuated without notice or opportunity to be heard through judicial notice procedures.

23. Because the June 1995 and March 1996 interim suspension orders and the April 1997 final order of suspension were rendered in violation of the plaintiff's due process and fair trial procedures rights to notice and opportunity for an evidentiary hearing under [1] the due process clause of the 5th Amendment (incorporating the 6th Amd.'s confrontation and the 14th Amd. equal protection rights) and [2] the D.C. statutes and rules governing bar disciplinary proceedings specifically, [3] administrative forfeiture proceedings generally, and [4] evidentiary requirements in judicial and administrative proceedings, those disciplinary orders and judgment are void in the District of Columbia and cannot be given full faith and credit elsewhere, including these federal court proceedings. (b) Furthermore, the defendants cannot avail themselves of any type of immunity accorded under the *Rooker-Feldman* doctrine of preclusion or U.S.C. §42:1983. (c) Finally, the plaintiff is entitled to injunctive relief, temporarily, preliminarily and permanently which would restore Richardson's license to practice law *nuc pro tunc* to June 27, 1995, vacation of all disciplinary orders, including but not limited to those imposing civil and criminal contempt upon the plaintiff based upon an unauthorized practice of law and to recover punitive and compensatory damages, costs (in this action and any other judicial proceedings filed since June 1995 to vindicate the wrongful deprivation of his license to practice law in June 1995) and interest.

V. FACTUAL BACKGROUND FOR CLAIMS

A. FLORIDA DISCIPLINARY INVESTIGATION & RESIGNATION (1990-1992)

24. (a) While practicing law in Tampa, Florida, Richardson became one of four (4) trustees of a private joint will and living trust settled by Jacquelyn N. Overton, one of his estate planning clients prior to her death in 1989. (b) The other co-trustees [two (2) of whom were beneficiaries of the Overton Trust] in August 1990 filed a civil action in the Circuit Court of Hillsborough County, Florida principally alleging that Richardson fraudulently received unreasonable compensation and otherwise breached his fiduciary duty as trustee and/or attorney of the Trust estate. See, *Deborah Watson et al. v. Richardson*, No. 90-25569, Div. "J" (Hillsborough County Circuit Court, Tampa, Florida). (c) This civil action was dismissed in June 1994 when Richardson filed for bankruptcy in the D.C. Bankruptcy Court and was discharged in December 1995.

25. (a) Plaintiffs' attorney, David Rankin, Esq., sent a copy of the complaint in the civil action to the local Florida Bar Counsel in November 1990. (b) Over one year later in December 1991, Florida Bar Counsel issued a letter of inquiry to Richardson regarding the 1990 civil complaint requesting Richardson's response. (c) Thereafter in January 1992, Florida Bar grievance proceedings were commenced to determine probable cause before a Florida Bar Grievance Committee in Hillsborough County.

26.   (a) While the Grievance Committee investigations were pending in June 1992, Richardson -- who since 1990 was still under suspension by the Florida Supreme Court for charging an unreasonable fee and filing a baseless lawsuit[15]-- petitioned for leave to resign the Florida Bar under Fla. Bar R. 3-7.11 effective *prior to* January 1, 1993. (b) A Response  by the Florida Bar  was filed on August 7, 1992 consenting to Richardson's resignation and requesting certain conditions be imposed upon readmission, which is allowed under the Florida Bar's resignation   Rule {Fla. Bar R. 7.11(b)  ["(R)esignation      may be subject to appropriate conditions".]}

27.   (a) Resignation and disciplinary proceedings are *separate* proceedings. (b) Under Florida Bar resignation procedures, if the petitioner has satisfied the standards of review, which relate only to whether the resignation would be in the best interest of the bench, bar and public, the Florida Supreme Court will allow resignation and dismiss all existing disciplinary actions against a petitioner [Fla. Bar R. 3-7.11(b) and (d)].   (c) There is no requirement of either a finding by the Florida Supreme Court or an admission by a petitioner of misconduct to be entitled to resign.

28.   (a) On August 27, 1992,  five (5)  days before Richardson could file his reply  to the Florida Bar  Counsel's response due on September 1, 1992,  the Florida Supreme Court granted his resignation petition without any conditions *except* that readmission would not be entertained for three (3) years. (b) Its order stating succinctly, *inter alia*: "The *uncontested* petition to resign with conditions in lieu of disciplinary proceedings, with leave to seek readmission after three (3) years, is granted effective immediately...." [*Fla. Bar v. Richardson,* 604 So.2d 489 (Fla., 08/27/92)].

29.   (a) On August 26, 1992, the complaining clients represented by Atty. Rankin filed a claim against  Richardson with the Florida Bar Client Security, which was *denied.* (c) In that claim they alleged that Richardson had received over $70,000 (Seventy Thousand Dollars) in unreasonable compensation in an estate valued at $163,838 (One Hundred Sixty-Three Thousand Eight Hundred Thirty-Eight Dollars).

30.    (a) This conflicted with two others claims filed by the  complaining clients represented by Atty. Rankin in other venues: (1) One in  Richardson's bankruptcy proceedings on June 22, 1994 claiming an amount of $53,160 (Fifty-Three Thousand One Hundred Sixty Dollars) in unreasonable fees paid Richardson; and (2) another as a complaint letter sent to defendant D.C. Bar Counsel dated August 17, 1992 claiming that "Richardson charged in excess of $50,000 [Fifty Thousand Dollars] in attorney's fees ..." (cf. *Richardson/Rankin*, BD No. 511-92*).

B.  D.C. RECIPROCAL DISCIPLINARY INVESTIGATION & PROSECUTION

(1992-1997)

31.  (a)  By letter dated August 17, 1992, David P. Rankin, Esq., an attorney for the Overton Trust beneficiaries and  other  co-trustees,  informed  "Ms. *Betty* [a/k/a Elizabeth J.] Branda" -- then a staff

---

[15] *Fla. Bar v. Richardson,* 574 So.2d 60 (Fla., 1990) (3rd revised opinion) [90-day suspension for charging an unreasonable fee]; *Fla. Bar. v. Richardson,* 591 So.2d 908 (Fla., 1991) [60-day suspension for filing a baseless lawsuit].  It should be noted that  *both* cases have unresolved constitutional infirmities. They are related and in both, the Florida Supreme Court made findings of fact by judicial notice without according Richardson prior notice or an opportunity to be heard.  Moreover, Richardson was denied an opportunity in both cases to present oral argument before the Florida Supreme Court *prior to* its judgments.

attorney in the Office of Bar Counsel (OBC or bar prosecutors) and currently Executive Attorney to the Board -- of the civil action taken in August 1990 against Richardson to recover alleged unreasonable compensation received by him and for breach of other fiduciary duties (i.e., misappropriation of funds and civil theft; failure to disclose trust information).  (b) The letter contained 53 (fifty-three) pages of attachments which consisted of

- an Amended Complaint (with 5 attachments),
- three Trust invoices (January, February and July, 1992) and a schedule of services (March-July 19--) by Richardson,
- two statements (including an expense voucher) of services and two correspondences by H. McKnight, CPA (the Trust administrator),
- a statement of services by K. Wright-Douglas, Esq. (January 1992) for litigation work,
- a summary of compensation received by Richardson from the Trust (a duplicate of an exhibit to the amended complaint),
- and the final accounting by Richardson as administrative co-trustee (January-June, 1992).

32.  On August 24, 1992 after receiving the Rankin letter on August 21, 1992, an "undocketed" investigation was opened by Office of Bar Counsel based upon the 1992 Rankin letter as *Richardson/Rankin*, B.D. #511-92 because the bar prosecutor (defendant Branda) concluded that the Rankin letter was "not a complaint" and *closed* the investigation *without notice* to Richardson of the submission as required by D.C. Bar Rule 2.3.[16]

33.  Richardson was never formally told of the existence of the *Richardson/Rankin* investigation, but discovered it inadvertently on *February 5, 2002* when he received a copy of the "Official Routing Form" or activity log of the investigation from the OBC (Atty. Catherine Kello) at the close of the final day (February 5, 2002) of hearings in his reinstatement proceedings commenced in 2001 which resulted in non-reinstatement in 2004 [*Note:* Richardson was considered unfit because he failed to admit that he charged an unreasonable fee, the alleged "misconduct" underlying the reciprocal disciplinary "misconduct" of resigning the Florida Bar while under disciplinary investigation).

34.  In May 1994, Atty. Rankin sent a correspondence (received in the same month) to defendant Branda with documents that were previously "requested" by defendant Branda.  The correspondence contained 78 (seventy-eight) pages of attachments, including:

- the Amended Complaint (without exhibits this time) filed against Richardson claiming unreasonable compensation, misappropriation of estate funds by theft, and other breach of fiduciary duties (failure to protect estate assets, and failure to provide material information on Trust matters),
- a notice of filing with 10 (ten) attachments in support of service under Florida's long-arm statute upon Richardson of the Complaint,
- four (4) motions, one with nine (9) documents attached, and Richardson's affidavit by the parties,
- four (4) orders by the judge in the 1990 Florida State court fee refund collection civil action, and
- a copy of an appellate court decision related to that civil action, and
- six (6) miscellaneous pleadings.

35.  (a) Then, in April 1994 -- year and eight (8) months later --, *Richardson/Rankin* (B.D. #511-92) was closed and merged with *Richardson/Bar Counsel*, B.D. #180-94.  (b) Both investigations arise out of the Overton Trust's claim of unreasonable compensation and fiduciary improprieties by Richardson while acting as attorney and trustee of the Trust, *except that* the 1992 Rankin letter alleges other

---

[16] Opening a bar disciplinary investigation is *mandatory* under Bd. R. 2.3 "[1] if it is *not unfounded on its face*; (2) *contains allegations which, if true, would constitute a violation of the Attorney's Oath* of Office *or the rules of professional responsibility* that would merit discipline; and (3) is *within the jurisdiction* of the Board"

misconduct, *viz*: misappropriation of Trust funds by theft, failure to protect trust assets, and other breach of fiduciary duties (e.g. failure to disclose material information), while the 1994 'docketed' investigation (*Richardson/Bar Counsel*) was limited solely to the 1992 resignation order of the Florida Supreme Court.

36. (a) Also in April 1994, bar prosecutor (defendant Branda) sent Richardson a disciplinary letter of inquiry based solely upon the Order of the Florida Supreme Court of August 27, 1992 allowing his resignation and terminating the Florida Bar's collateral disciplinary investigation into whether Richardson charged the Overton Trust an unreasonable fee or committed any fiduciary improprieties. (b) There was no mention of any  August  1992 Rankin letter or an investigation in B.D. #511-92 (*Richardson/Rankin*) in the April 1994 disciplinary letter of inquiry, *except* June 1995 Asst. Bar Counsel Donna M. DeSilva sent Richardson a letter enclosing the 1992 and 1994 Rankin correspondences and attachments without mention of their source from the 1992-1994 *Richardson/Rankin* investigation, writing, "As per our discussions, enclosed please find copies of all correspondences from the *complainant's attorney* [Rankin] regarding the above referenced matter ['*Richardson/Bar Counsel*, Bar Docket No. 190-94'], [Letter, Donna M. DeSilva, Asst. Bar Counsel to Richardson (06/06/1995) with "Enclosure"].

37. (a) After receiving the April 13, 1994 disciplinary letter of inquiry based upon  the August 1992 Florida resignation order, Richardson submitted by mail a detailed written response denying any culpability on *May 27, 1994*. (b) Three hundred and sixty-four days later, by letter dated *May 26, 1995*, D.C. Bar Counsel (Leonard Becker, Esq.) submitted to the DCCA a certified copy of Richardson's Florida Bar resignation order and  recommended to the DCCA in B.D. #180-94 (*Richardson/Bar Counsel*) that  Richardson be temporarily suspended based solely upon the 1992 Florida resignation order thereby triggering *automatic* interim suspension under D.C. Bar R. XI, §11 (d).

38. This prosecutorial decision was without basis in law or fact, for [1] not only is there no D.C. Bar disciplinary rule governing  resignation of another bar while under disciplinary investigation,[17] but [1] the interim suspension procedures allows automatic suspension without notice to the accused attorney and [3] without following the mandatory requirements of D.C. Code §11-2503(b), i.e. without any sworn written charges being filed and personally served upon Richardson and without an evidentiary hearing being accorded him.

39. (a) Thus, interim suspension was imposed summarily through these *ex parte* administrative-judicial notice procedures by the DCCA and thereafter, the DCCA commenced the 1995-1997 reciprocal disciplinary proceedings  before its Board in June 1995  [*In re Richardson*, 692 A.2d 417, *429* (1997) ('*Richardson 1997*') ("On June 27, 1995 (the D.C. Court of Appeals) ordered Richardson's temporary suspension, *without hearing*, pending final disposition of the proceeding."] (b) Richardson has been suspended from the practice of law in this jurisdiction since June 27, 1995, or over 14 years and counting.

40. The DCCA's penalty or disciplinary sentence imposed upon Richardson consisted of a license revocation period of in excess of five (5) years:

---

[17] *Accord*:  In DeSilva's June 6, 1995 letter she states Bar Counsel's position for submission of the resignation order as permitted under case law (as opposed to a Bar Rule) and request for interim suspension as follows: "We understand that you are disturbed regarding our *notice made to the [D.C.] Court  [of Appeals]* and proposed order. As explained during our telephone conversation last week, *those filings are required pursuant to [D.C. Bar] Rule XI, Section 11(b) and (d)*.  You are free to file with the court whatever papers you wish to oppose the notice and proposed order of interim suspension.  However, *it is the position of this office that your resignation in the face of disciplinary charges in Florida is discipline.  See, e.g., In re Pierson, 624 A.2d 1229 (D.C. 1993); In Re Reiner, 617 A.2d 984 (D.C. 1992)*" [Letter, Desilva, Asst. Bar Counsel to Richardson, "Re: Richardson/Bar Counsel, Bar Docket No. 180-94," (06/06/1995) *supra*.]

- [a] three (3) years for the misconduct of resigning the Florida Bar while under investigation for charging an *unspecified* unreasonable fee or the commission or *unspecified* fiduciary improprieties in a Florida trust administration matters *plus*
- [b] an enhancement of two (2) years ten (10) months already served for the misconduct of the untimely filing of a registration statement required of attorneys whose licenses are temporarily suspended under D.C. Bar R. XI, §14(f) and legislated judicially in *In re Slosberg,* A.2d 650:1329 (DC, 1994).

41. (a) Shortly after the DCCA revoked Richardson's law license in June 1995 without notice and an evidentiary hearing, Richardson *un*successfully challenged the temporary suspension imposed in the D.C. federal district court (see App. B). (b) Richardson also challenged the March 1996 'fresh' interim suspension order brought by Assistant Bar Counsel DeSilva. (c) However, at the time of both challenges, Richardson was unaware of *Richardson/Rankin,* the 1992-1994 'undocketed' investigation, or its records and its merger into the 1994 'docketed' investigation (*Richardson/Bar Counsel).*

42. Furthermore, DeSilva never revealed to the DCCA during the two temporary (1995/1996) and the final suspension reciprocal disciplinary suspension proceedings (1997), the existence of the *1992 Richardson/Rankin* (the 'undocketed' investigation), its merger with *Richardson/Bar Counsel* (the 'docketed' investigation) in *1994,* and the bar prosecutors' failure to notify Richardson of the existence of *Richardson/Rankin* investigation and the merger proceeding.