## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

_____

| | : | |
|---|---|---|
| **T. CARLTON RICHARDSON**, | : | |
| | : | |
| **Plaintiff,** | : | **Civil Action No. 09-01856 (HHK)** |
| | : | |
| **v.** | : | |
| | : | |
| | : | |
| **DISTRICT OF COLUMBIA**, *et al*., | : | |
| | : | |
| **Defendants.** | : | |

_____:                                  :

## JUDICIAL DEFENDANTS' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF THEIR MOTION TO DISMISS

Defendants District of Columbia Court of Appeals, its Chief Judge, Eric T. Washington, and its Associate Judges, Vanessa Ruiz, Inez Smith Reid, Stephen H. Glickman, Noel Anketell Kramer, John R. Fisher, Anna Blackburne-Rigsby, Phyllis D. Thompson and Kathryn A. Oberly (collectively "Judicial Defendants"), respectfully submit this memorandum in support of their motion to dismiss the complaint pursuant to Fed. R. Civ. P. 12(b)(1) and (6). These defendants respectfully request that this Court to dismiss the Complaint for lack of subject matter jurisdiction and for failure to state a claim.

Plaintiff sues the D.C. Court of Appeals and the individual Judicial Defendants, asserting that his suspension from the practice of law in the District of Columbia and his criminal contempt conviction for having violated interim suspensions imposed against him abridged his Fifth Amendment rights to due process and equal protection, Fourth Amendment protections from unreasonable searches and seizures, Sixth Amendment right to confront testimonial and documentary evidence, and the Eighth Amendment's prohibition against disproportionate punishment.  Cmplt ¶¶10; 59-67; 78-86.  Plaintiff further contends that in investigating and

adjudicating those matters, the various defendants in this case conspired to deprive him of his civil rights in violation of 42 U.S.C. § 1985.  He seeks damages and injunctive and declaratory relief.

In doing so, Plaintiff calls upon this United States District Court to review judicial decisions of a court of the District of Columbia and to adjudicate claims that are inextricably intertwined with the complained-of judicial actions.  This Court lacks subject matter jurisdiction to do so under the *Rooker-Feldman* doctrine.  *See Rooker v. Fidelity Trust Co.,* 263 U.S. 413 (1923) (holding that federal district courts cannot sit in appeal of the highest court of a state) and *Dist. of Columbia Ct. of App. v. Feldman,* 460 U.S. 462 (1980) (holding that federal district courts have no jurisdiction over challenges to state bar disciplinary proceedings).  Accordingly, the Complaint should be dismissed with prejudice pursuant to Fed. R. Civ. P. 12(b)(1).

Moreover, Plaintiff has previously litigated the issue of this Court's jurisdiction to review the DCCA's decisions on five prior occasions, each of which resulted in the dismissal of the complaint for lack of subject matter jurisdiction.  Plaintiff has also fully litigated, or had the opportunity to fully litigate each of his claims asserted herein.  Accordingly, this civil action would be properly dismissed with prejudice pursuant to Fed. R. Civ. P. 12(b)(6) on *res judicata* grounds, if subject matter jurisdiction were not lacking.

Further, Plaintiff acknowledges that the facts underlying his claims were known to him in February 2003.  Accordingly, his claims against the Judicial Defendants are time-barred and should be dismissed with prejudice pursuant to Fed. R. Civ. P. 12(b)(6).

In addition, to the extent that Plaintiff seeks recovery from these defendants, he does so on claims arising out of their judicial functions.  The Judicial Defendants enjoy absolute immunity from such claims.  *See, e.g.,  Butz v. Economu*, 438 U.S. 478, 511 (1978); *Forrester v. White*, 484

2

U.S. 219, 225 (1988).  Accordingly, the Complaint would be subject to dismissal with prejudice pursuant to Fed. R. Civ. P. 12(b)(6) as against them on this basis as well, were subject matter jurisdiction to exist, which it does not.

Moreover, independent of these other dispositive defects, the Complaint does not assert allegations against any Judicial Defendant that are sufficient to frame a cause of action in a manner sufficient to withstand this Rule 12(b)(6) challenge.  In fact, most of the individual Judicial Defendants did not even join the D.C. Court of Appeals until 2005 or later.

Finally, as observed by this Court in its October 29, 2009 Order herein, were it not for these foregoing bases for dismissal with prejudice, the prolix Complaint does not comply with the requirements of Fed. R. Civ. P. 8(a).  On this basis it would be properly dismissed without prejudice.

### Pertinent Background[1]

The Complaint asserts that the Judicial Defendants and others engaged in various constitutional violations related to reciprocal disciplinary proceedings prosecuted against Plaintiff after he charged excessive attorney's fees and refused to abide by disciplinary rules. *See, e.g., Fla. Bar v. Richardson,* 574 So.2d 60 (Fla.  1990) (suspending Richardson for charging an elderly couple of modest means $10,551 to settle a $22,000 probate estate, guiding them to mortgage their home to pay his fee); *In re Richardson,* 759 A.2d 649 (D.C. 2000) (convicting Richardson of criminal contempt for practicing law while under a disciplinary suspension). As reflected below, this suit is the latest in a long series of collateral attacks on  Richardson's disciplinary suspensions,

---

[1]  For more than fifteen years, Richardson has repeatedly filed collateral challenges to state bar disciplinary proceedings. For the Court's convenience, Judicial Defendants have adopted a chart prepared by the Bar Counsel Defendants listing the cases discussed below as Exhibit 1.

through which Richardson continues to seek to have this Court overturn a judicial action by the District of Columbia Court of Appeals.

**A.      Events Underlying Plaintiff's Discipline**

**1.      Richardson's Original Florida Discipline and D.C. Reciprocal Discipline.**

In 1990, Richardson was suspended from the practice of law in Florida for 91 days for charging an excessive fee. *See Florida Bar,* 574 So.2d at 60 (revised opinion of February 14, 1991).  As a result of the Florida suspension, and in accordance with the recommendation of its Board on Professional Responsibility ("the Board"), the District of Columbia Court of Appeals imposed reciprocal discipline on Richardson in the form of a 91-day suspension. *See In re Richardson,* 602 A.2d 179 (D.C. 1992)

**2.      Alleged Breach of Fiduciary Duty, Florida Resignation and D.C. Interim Suspension**

While a second complaint for charging excessive fees was pending before the Florida Bar, Richardson filed a petition for resignation to the Supreme Court of Florida. *See Florida Bar v. Richardson,* 604 So.2d 489 (Fla. 1992). *See also In re Richardson,* 692 A.2d 427 (D.C. 1997). The Florida court granted his request on August 27, 1992, with leave to seek reinstatement upon demonstration of fitness to practice law after three years.

On June 27, 1995, over Richardson's objection, the D. C. Court of Appeals imposed a temporary interim suspension so that the Board could consider whether reciprocal discipline should be imposed in D.C. by virtue of his resignation in Florida while disciplinary charges were pending there. *In the Matter of Richardson,* No. 95-BG-639 (D.C. June 27, 1995) (Ex. 2). *See also Richardson v. Dist. of Columbia Ct. of App.,* 83 F.3d 1513, 1514 (D.C. Cir. 1996) (Ex. 5).

On December 29, 1995, the D.C. Circuit disbarred Richardson based on the Florida resignation. *See In re Richardson,* No. 95-85 19 (D.C. Cir. Dec. 29, 1995).  His D.C.

4

disciplinary matter (No. 95-BG-639) was still pending, and the D.C. Court of Appeals imposed a second temporary suspension to consider whether additional reciprocal discipline should be imposed based on the Circuit Court's action. *See Richardson v. District of Columbia Court of Appeals*, 962 F. Supp. 1 (D.D.C. 1997)

### 3.      Investigation and Conviction of Unauthorized Practice of Law

In 1996, the D.C. Office of Bar Counsel ("Bar Counsel") began investigating allegations that Richardson had continued to practice law despite the D.C. Court of Appeals' interim suspension orders. During the investigation, Bar Counsel obtained a copy of a check Richardson had written from his trust account for a C.L.E. class in "Billing Ethics", which was used in the prosecution of his contempt conviction. *See In re Richardson,* 759 A.2d at 654. Based on this, Richardson brought suit in this Court for alleged invasion of privacy and infunctive relief *Richardson v. District of Columbia Bar*, No. 96-CV-2286 (D.D.C. filed Oct. 2, 1996).

### 4.      Final Disciplinary Suspension

After determining that the Florida resignation was discipline, the Board recommended that the D.C. Court of Appeals impose final reciprocal discipline. *See In re Richardson,* 692 A.2d 427, 428-29 (D.C. 1997). After hearing Richardson's arguments against such discipline, the D.C. Court of Appeals agreed with the D.C. Board on Professional Responsibility (Board) and suspended Richardson from the practice of law for three years, with the added condition that he must demonstrate his fitness to practice before being readmitted. *Id.* at 436. The United States Supreme Court denied Richardson's petition for certiorari. *See In re Richardson,* 522 U.S. 118 (Feb. 23, 1998) (petition denied), 522 U.S. 1103 (April 27, 1998) (petition for rehearing denied). On March 6, 1998, Richardson was convicted of criminal contempt for

5

violating the interim suspension order. *See In re Richardson,* 759 A.2d 649, 651 (D.C.

2000 (affirming conviction).

**B.      Plaintiff's Prior Suits**

Plaintiff first sought review by this Court of disciplinary action against him in 1990.

*Richardson v. Florida Bar,* No. 90-984, 1990 WL 116727, at *2 (D.D.C. May 15,1990)

Richardson "challeng[ed] the procedures and results of the Florida disciplinary proceedings on

federal antitrust and constitutional grounds." *Richardson v. Florida Bar,* 1990 WL 116727, at

*2.  That complaint was dismissed for lack of subject matter jurisdiction under the *Rooker-*

*Feldman* doctrine. *Id.*

Following his Florida suspension, by decision dated January 17, 1992, the District of

Columbia Court of Appeals imposed reciprocal discipline on Richardson in the form of a 91-day

suspension. *See In re Richardson,* 602 A.2d 179 (D.C. 1992) .  In reaching its decision to

reciprocally suspend Richardson, the court considered and ruled against Plaintiff's assertions

that (a) he was denied due process and equal protection in the makeup and deliberation of the

Florida grievance committee; (b) the Florida probate court that originally found he had charged

excessive fees had acted beyond its subject matter jurisdiction; and (c) that the Florida Supreme

Court denied him due process by considering improper evidence. *See id.* at 180.

The D. C. Court of Appeals again imposed discipline against Richardson on June 27,

1995.  Over Richardson's objection, the court imposed a temporary interim suspension so that

the Board could consider whether reciprocal discipline should be imposed in D.C. based on his

resignation in Florida while disciplinary charges were pending there. *In the Matter of Richardson,*

No. 95-BG-639 (D.C. June 27, 1995)  (Ex. 2).  To challenge the temporary suspension,

Richardson sued in this Court, "alleging that his temporary suspension, and the D.C. Bar rule that

permits it, see D.C. App. Rule XI § 11(d), unconstitutionally deprive[d] him, without due process, of his liberty interest in practicing law." *See Richardson v. Dist. of Columbia Ct. of App.,* 83 F.3d 1513, 1514 (D.C. Cir. 1996) (Ex. 5). This Court dismissed Richardson's suspension claim for want of jurisdiction under the *Rooker-Feldman* Doctrine, and abstained from hearing his claim against the D.C. Bar rule itself under *Younger v. Harris,* 401 U.S. 37, 43-54, 91 (1971). *Id.* The U.S. Court of Appeals for the District of Columbia Circuit affirmed without reaching the abstention question on the basis that this Court "lacked jurisdiction to hear either of Richardson's claims." *Id.*

Nevertheless, Plaintiff returned to this Court on March 27, 1997, to challenge a second interim suspension order. *See Richardson v. D.C. Ct. of App.,* 962 F. Supp. 1 (D.D.C. Mar. 27, 1997) (Ex. 6). By that time, the U.S. Court of Appeals had disbarred Richardson based on the Florida resignation. *See In re Richardson,* No. 95-8519 (D.C. Cir. Dec. 29, 1995). With his D.C. disciplinary matter (No. 95-BG-639) still pending, on March 12, 1996, the D.C. Court of Appeals imposed a second temporary suspension to consider whether to impose additional reciprocal discipline based on the D.C. Circuit's action. *See Richardson,* 962 F. Supp. 1 (Ex. 6).

In that federal suit, Richardson challenged the constitutionality of his March 12, 1996 temporary suspension that was imposed in accordance with D.C. Bar Rule XI § 11(d). This Rule provides for temporary suspension in the District of Columbia upon notice to the D.C. Court of Appeals that an attorney has been suspended from another state's bar. He contended that he had been denied due process under the Fourteenth Amendment by application of D.C. Bar Rule XI § 11(d), because the D.C. Court of Appeals did not give him a hearing on this issue before temporarily suspending him.

In dismissing that Complaint, Judge Sporkin observed that Judge Hogan had previously

dismissed such a challenge on jurisdictional grounds and been affirmed by the D.C. Circuit. 962 F.

Supp. 1. The challenged temporary suspension was a final judgment of the D.C. Court of

Appeals. *Id.* (citing 83 F.3d at 1514-15). Accordingly, this Court could not review the

constitutionality of D.C. Bar Rule XI § 11(d), because in doing so, the Court would be reviewing

the final judgment of the D.C. Court of Appeals. *Id.* (citing 83 F.3d at 1514-16).[2] *Id.*

On Richardson's appeal of Judge Sporkin's order, the D.C. Circuit summarily

affirmed the dismissal under *Rooker-Feldman* because Richardson's allegations were

"inextricably intertwined" with the previous D. C. Court of Appeals decisions. *See Richardson

v. D.C. Ct. of App.,* No. 97-7085, 1997 WL 811754 (D.C. Cir. Dec. 9, 1997) (Ex. 7).

Meanwhile, Richardson had sued the D.C. Bar, two employees of the Office of Bar

Counsel, and the Clerk of the D. C. Court of Appeals in District Court for "invasion of privacy

and injunctive relief." *See* Complaint, *Richardson v. Dist. of Columbia Bar,* No. 96-CV-2286

(D.D.C. filed Oct. 2, 1996) (Ex. 16). Richardson claimed that those Defendants had violated his

rights under the Privileges and Immunities Clause of the Fourteenth Amendment, the Fourth

Amendment and the Due Process clause because a copy of a check Richardson had written from

his trust account for a C.L.E. class in "Billing Ethics" had been obtained by D.C. Bar Counsel in

investigating allegations that Richardson had continued to practice law despite the D.C. Court of

Appeals' interim suspension orders.

The D.C. Circuit summarily affirmed the District Court's dismissal of Richardson's

complaint because the complaint failed to state a claim upon which relief could be granted.

*Richardson v. Dist. of Columbia Bar,* No. 97-7051, 1997 WL 404321 (D.C. Cir. June 30, 1997)

(Ex. 9). Those defendants' challenged actions "did not violate appellant's privacy rights under

---

[2]      Rather, review of that decision  would only be available by seeking certiorari to the

either the Fourth or Fifth Amendments because he neither owned nor possessed the check used

to institute the investigation or the bank records which were subpoenaed." *Richardson,* 1997

WL 404321  *1.  Nor did those actions violate his procedural due process rights because he

lacked any "constitutionally protected liberty or property interest in the check or bank records

at issue." *Id.*  Finally, he had failed to assert factual allegations necessary to support a claim

based on the Privileges and Immunities Clause of Article IV, Section 2 of the Constitution.  *Id.*

Thereafter, Richardson initiated another action against the D.C. Court of Appeals in

this Court. *See Richardson v. D.C. Ct. of App.,* No. 97-CV-1594 (D.D.C. July 17, 1997) (Ex.

10). Plaintiff asserted that the D.C. Court of Appeals had violated his Fourth Amendment

rights to be free of unreasonable searches and seizures and his Fifth Amendment rights to

due process and against self-incrimination.  This Court dismissed the case, and the D.C.

Circuit affirmed under *Rooker-Feldman. See Richardson v. D.C. Ct. of App.,* No. 97-7242

(D.C. Cir. Sept. 16, 1998)1998 WL 720682 (Ex. 11). In that same matter, the D.C. Circuit

granted sanctions against Richardson, stating: "Appellant's repeated attempts to litigate

claims concerning his disbarment proceedings in the federal courts even though the federal courts

lack jurisdiction under the *Rooker-Feldman* doctrine . . . warrant sanctions." Order (Mar. 25, 1999)

(Ex. 17).

On March 6, 1998, Richardson was convicted of criminal contempt for violating the

interim suspension order. *See In re Richardson,* 759 A.2d 649, 651 (D.C. 2000) (affirming

conviction). Contesting his conviction before the D.C. Court of Appeals, Richardson asserted

that (1) a single D.C. Court of Appeals judge lacked jurisdiction to find contempt or to impose a

sentence; (2) the court lacked personal jurisdiction over him for purposes of the contempt

---

United States Supreme Court. *Id.* at 1515.

proceeding; (3) the court lacked probable cause necessary to support the contempt proceeding; (4) he was denied a jury trial on the contempt charges in violation of the Sixth Amendment; (5) he was denied equal protection by being subject to immediate suspension under reciprocal discipline, rather than being afforded a 30-day grace period prior to suspension; (6) the evidence of contempt was insufficient to support his conviction; (7) the underlying interim suspension order suffered from procedural and due process deficiencies; (8) his Fourth Amendment rights had been violated by the disclosure of his bank records in contempt proceedings; and (9) his Fifth Amendment rights had been violated by the enforcement of Bar Counsel's subpoenas for his bank records. *Id.* The Court of Appeals held against him on each of these claims. *Id.*[3]

Richardson then challenged his conviction in a habeas corpus action in this Court. *See Richardson v. Ct. Servs. & Offender Supervision Agency for D.C.,* No. 99-657 (D.D.C. July 11, 2001) (Cmplt Ex. A) , *aff'd, Richardson v. D.C. Ct. Servs. & Offender Supervision Agency,* No. 01-7135 (D.C. Cir. Jan. 10, 2002)*.* In that action, Richardson again tried to attack the underlying interim suspension orders and the related contempt investigation. *See* Memorandum Order (Cmplt. Ex. B), (filed July 31, 2001) (denying Richardson's motion to reconsider). Again, Richardson was instructed that federal courts do not have jurisdiction to review those matters. *Id.*

After determining that the Florida resignation was discipline, the Board recommended that the D.C. Court of Appeals impose final reciprocal discipline. *See In re Richardson,* 692 A.2d 427, 428-29 (D.C. 1997) . After hearing Richardson's arguments to the contrary, the D.C. Court of Appeals agreed with the Board and suspended Richardson from the practice of law

---

[3]     For the reasons set forth in *In re Richardson*, 759 A.2d 649 (D.C. 2000),  all of Plaintiff's alleged constitutional deprivation and conspiracy assertions fail to state a claim upon which relief can be granted.

for three years, with the added condition that he must demonstrate his fitness to practice before being readmitted. *Id.* at 436. The United States Supreme Court denied Richardson's petition for certiorari. *See In re Richardson,* 522 U.S. 118 (Feb. 23, 1998) (petition denied), 522 U.S. 1103 (April 27, 1998) (petition for rehearing denied).

In 2004, Richardson filed yet another suit in this Court challenging his suspensions. The Court *sua sponte* ordered him to show cause why his case should not be dismissed for lack of subject matter jurisdiction. On March 31, 2004, the Court dismissed his action with prejudice. *See* Memorandum and Opinion, *Richardson v. Dist. of Columbia Ct. of App.,* No. 04-101 (D.D.C. March 31, 2004) (Ex. 12). Richardson filed a "Motion for Reconsideration and Vacate Order of Dismissal", on June 24, 2004 - denied June 25, 2004, but never appealed the adverse decision.

Six months later, Richardson filed an action "for fraudulent misrepresentation and the wrongful and conspiratorial suspension of the plaintiff's license to practice law." *See* Complaint, *Richardson v. District of Columbia,* No. 05-2 10 (D.D.C. filed Jan. 28, 2005)*.*  The Court again ordered Richardson, *sua sponte,* to show cause why his case should not be dismissed for lack of subject matter jurisdiction.  The Court dismissed his complaint on March 29, 2005 (Mot. for Recons. denied Apr. 18, 2005) (Ex. 13). After Richardson appealed every order in that case, the D.C. Circuit summarily affirmed. *Richardson v. District of Columbia,* No. 05-7078 (D.C. Cir. Nov. 2, 2005) (Ex. 14).

On September 28, 2006, Richardson again filed suit in this Court challenging his suspension from the practice of law by the D.C. Court of Appeals.  *Richardson v. District of Columbia, et al.,* No. 06-1665 (RJL); *see Richardson* 06-1665 Memorandum Opinion (D.D.C. filed July 11, 2007) (Ex. 18).  Through that suit, Richardson sought post-judgment relief

through a Rule 60(b) motion to reinstate his habeas petition dismissed in 2001 and damages and injunctive relief under 42 U.S.C. § 1985 for various alleged civil rights violations related to his prior disciplinary suspensions. This Court held that Plaintiff had failed to demonstrate the existence of "extraordinary circumstances" necessary to justify Rule 60(b)(6) relief and that he had failed to move within a reasonable time of his discovery of purported "newly discovered evidence of prosecutorial misconduct, obstruction of justice and fraud." (Ex. 18, at 4.). Accordingly, Richardson's request for Rule 60(b)(6) relief was denied. *Id.* at 1-2. Further, the Court found that "the issue of whether the district court has jurisdiction to review the [challenged] state court decision has previously been litigated four times, *see Richardson I; Richardson II; Richardson III; Richardson IV*", and decided adversely to Richardson under the *Rooker-Feldman* doctrine in each instance. *Id.* at 5-6. On that basis, his civil rights claims were dismissed on collateral estoppel grounds. *Id.* at 6. The Court further noted that Richardson's civil rights claims were time-barred. *Id.* at 6 n.7.

The U.S. Court of Appeals summarily affirmed the District Court's dismissal of the suit. The D.C. Circuit held that Richardson had "not demonstrated 'extraordinary circumstances' justifying the reinstatement, pursuant to Fed. R. Civ. P. 60(b)(6), of his previously dismissed habeas petition" and that his civil rights claims were barred by collateral estoppel. *Richardson v. District of Columbia,* No. 07-7138, 2008 WL 2396186 (D.C. Cir. Feb. 13, 2008) (Ex. 19).

Plaintiff filed this suit on September 29, 2009. He again alleges that he has been denied Fifth Amendment rights to due process and equal protection and Fourth Amendment protections from unreasonable searches and seizures. Cmplt ¶10. He now styles his Sixth Amendment claim as a denial of his right to confront testimonial and documentary evidence and asserts that his suspension violates the Eighth Amendment's prohibition against disproportionate

12

punishment.  *Id.*  Plaintiff seeks damages and injunctive and declaratory relief.

## ARGUMENT

## I.      THIS MATTER IS APPRORIATE FOR DISPOSITION AS  A MATTER OF LAW

When ruling on Rule 12(b)(6) motions, courts may employ a "two-pronged approach."

*Ashcroft v. Iqbal*, ___ U.S. ___, 129 S. Ct. 1937, 1950 (2009). Although courts must assume the

veracity of all "well-pleaded factual allegations" in the complaint, *id.*, they need not accept as true

"'naked assertion[s]' devoid of 'further factual enhancement,'" *id.* at 1949 (quoting *Bell Atl. Corp.*

*v. Twombly*, 550 U.S. 544, 557 (2007)), or "legal conclusions cast in the form of factual

allegations." *Kowal v. MCI Communications Corp., Inc.*, 305 U.S. App. D.C. 60, 65, 16 F.3d

1271, 1276 (1994). A pleading must offer more than "'labels and conclusions' or 'a formulaic

recitation of the elements of a cause of action' . . . ." *Iqbal*, 129 S. Ct. at 1949 (quoting *Twombly*,

550 U.S. at 555).

Once a court has determined that there are well-pleaded factual allegations, it must then

determine whether the allegations "plausibly give rise to an entitlement to relief" by presenting

"sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its

face,'" in that "the court [can] draw the reasonable inference that the defendant is liable for the

misconduct alleged." *Id.* at 1949-50 (quoting *Twombly*, 550 U.S. at 570). Simply alleging facts

"consistent with a defendant's liability . . . stops short of the line between possibility and

plausibility of entitlement to relief." *Id.* at 1949.  *See also Clampitt v. American Univ.*, 957 A.2d

23, 29 (D.C. 2008) ("Factual allegations must be enough to raise a right to relief above the

speculative level . . . .") (quoting *Bell Atlantic*).

> The filing of a motion pursuant to Rule 12(b)(6) does not call upon the plaintiff to
> offer his proof, [h]owever, the pleader must set forth sufficient information to
> outline the legal elements of a viable claim for relief or to permit inferences to be
> drawn from the complaint that indicate that these elements exist.

*Manago v. District of Columbia*, 934 A.2d 925, 926 (D.C. 2007) (citations omitted).[1]

The District avers that the instant Complaint fails to meet even this lenient standard, hence plaintiff fails to state a claim on which relief may be granted.

## II.     THE DISTRICT COURT LACKS SUBJECT MATTER JURISDICTION OVER RICHARDSON'S COLLATERAL ATTACK ON HIS D.C. BAR SUSPENSION

Federal District Courts lack jurisdiction over collateral attacks brought by those who lost in state court. *Dist. of Columbia Ct. of App. v. Feldman,* 460 U.S. 462, 476 (1983). Congress has vested appellate review of state court decisions solely in the United States Supreme Court. *Id. See* 28 U.S.C. § 1257.  Richardson's complaint is nothing more than a complaint by the losing party in state court "seeking review and rejection of that judgment."  *Exxon Mobil Corp. v. Saudi Basic Indus. Corp,* 544 U.S. 280, 291 (2005).  Accordingly, it should be dismissed for lack of subject matter jurisdiction.

### A.     The D. C. Court of Appeals' Decisions to Suspend Richardson Were *Judicial* Actions

The *Rooker-Feldman* doctrine bars all federal suits seeking to have an adverse state court judgment overturned, and all suits raising federal claims "inextricably intertwined" with the state-court judgment.  *See Rooker,* 263 U.S. at 417; *Feldman,* 460 U.S. at 486-87; *Richardson II-C* (Ex. 4).  This case is remarkably similar to *Feldman.*  In *Feldman*, two plaintiffs sued the D.C. Court of Appeals claiming that they had been improperly denied permission to take the D.C. Bar exam. 460 U.S. at 465-69.  The Court first held that the D.C. Court of Appeals' decisions were *judicial* actions, because the D.C. judges considered policy and equitable arguments in deciding whether to apply a bar admission rule. *Id.* at 480-81.  The Court then decided that the Plaintiffs' claims that the D.C. Court of Appeals acted arbitrarily and

14

capriciously in denying their petitions were *inextricably intertwined* with the judicial decisions. *Id.* The District Court had no subject matter jurisdiction over those allegations. *Id.* at 486-87.

Clearly, the D.C. Court of Appeals' decisions to suspend Richardson (first on an interim basis, (Ex. 2), then as final reciprocal discipline, 692 A.2d 427 (D.C. 1997)) and its decision to hold him in criminal contempt, 759 A.2d 649 (D.C. 2000), like its earlier decisions at issue in *Feldman,* were *judicial actions.* The court heard legal arguments from Richardson and the Bar, considered "liabilities as they [stood] on present or past facts and under laws supposed already to exist," and rendered a decision. *Feldman,* 460 U.S. at 477 (quoting *Prentis v. Atlantic Coast Line Co.,* 211 U.S. 210, 226 (1908)). As such, Richardson cannot obtain review of those decisions in federal district court.

But in seeking to "[e]njoin the [D.C. Court of Appeals] from denying Richardson's reinstatement," (Cmplt ¶ 110(a), that is exactly what Richardson is trying to do. As in each of his previous suits, Richardson filed this action attempting to circumvent the D.C. Court of Appeals' disciplinary authority over the D.C. Bar. Despite unambiguous direction from this Court (e.g. *Richardson v. D.C. Court of Appeals,* No. 97-7242, Ex. 11), Richardson continues to file repetitive and frivolous litigation demanding "a second bite at the apple." 962 F.Supp. 1 (Ex. 6). Because the District Court has no jurisdiction to review the disciplinary decisions, which are final judicial actions of the D.C. Court of Appeals, this suit should be dismissed with prejudice.

**B.      Richardson's Claims are Inextricably Intertwined With Those Judicial Decisions**

*Rooker-Feldman* bars not only those suits actually seeking reversal (in the form of injunction or otherwise) of the state court proceeding, but also any claims "inextricably intertwined with the District of Columbia Court of Appeals' decisions." *Feldman,* 460 U.S. at 486-87. Richardson's claims are "inextricably intertwined" with his disciplinary actions.

15

Richardson "seeks a declaration that *provisios* of D.C. statutes and bar disciplinary rules providing for summary suspension . . . of an attorney's license to practice law *per se* and as applied are unconstitutional and that any orders or judgments rendered under those enactments are likewise null, void, and unenforceable  . . . ."  (Cmplt ¶ 2 *see also* ¶110 (seeking injunctive relief against D.C. Court of Appeals regarding Richardson's sought reinstatement and his various suspensions).)  This is clearly a demand for review and reversal by this Court of decisions of the D.C. Court of Appeals.  Equally clearly this Court cannot conduct such review or reverse such decisions.

In *Feldman,* the Supreme Court held that the lower federal courts lacked jurisdiction over claims that the D.C. Court of Appeals had "acted arbitrarily and capriciously in denying [plaintiffs'] petitions for waiver and that the court acted unreasonably and discriminatorily in denying their petitions." *Id.* at 486.  These allegations impermissibly "required the District Court to review a final judicial decision" of the D.C. Court of Appeals, because the "allegations [were] inextricably intertwined" with those decisions.  *Id.* at 486 (finding jurisdiction over the plaintiffs' general challenge to the constitutionality of the underlying bar rule).  That Richardson can "succeed only to the extent that the [D.C. Court of Appeals] wrongly decided the issues before it," Richardson's suit is nothing more than "a prohibited appeal of the state-court judgment.  *Pennzoil Co. v. Texaco Inc.,* 481 U.S. 1, 25 (1987) (Marshall, J., concurring).

While the contours of "inextricably intertwined" are not sharply defined, this uncertainty does not benefit Richardson; his claims are clearly barred.  The "paradigm situation in which *Rooker-Feldman* precludes a federal district court from proceeding" arises when the losing party in state court "repair[s] to federal court to undo the [state] judgment."  *Exxon Mobil,* 544 U.S. at 293.  In previous Richardson cases, this Court has stated that claims are inextricably intertwined if

16

holding in the Plaintiff's favor would require the District Court to conclude that the D.C. Court of Appeals got it wrong. For example, in *Richardson v. D.C. Court of Appeals,* No. 95-7211, the Circuit Court affirmed dismissal of Richardson's attack on D.C. Bar Rule XI, § 11(d) (allowing temporary suspension of an attorney without a hearing to consider whether reciprocal discipline should be imposed). 83 F.3d at 1515-16.  The constitutional attack was distinguishable from that in *Feldman,* because in that case the judicial action at issue was the D.C. Court of Appeals's refusal to waive a bar admission rule requiring graduation from an A.B.A. approved law school. *See Feldman.*  The judicial action in *Feldman* was not application of the bar admission rule, so the constitutional challenge to that rule was not inextricably intertwined with the judicial action. But in *Richardson v. D.C. Court of Appeals,* No. 95-7211, the judicial action was a decision applying Rule XI, § 11(d) to Richardson's case.  *See* 83 F.3d at 1515-16.  "Richardson's attacks on § 11(d)'s constitutionality, however, are *not merely intertwined* with his attack on the decision to suspend him *but are one and the same* . . . .  His attack on the rule *cannot be contemplated without his attack on his suspension.*" 83 F.3d at 1515-16 (emphasis added).

His current allegations reflect the claims presented in his previous suits. All of the claims are based on Richardson's conviction that the D.C. Court of Appeals' judicial acts were wrong. He asserts claims of having been denied due process (¶¶ 11, 60, 61, 83, 85, 100); denial of equal protection of law (¶¶ 104-105) having been charged and convicted of criminal contempt without probable cause to support such proceedings (¶ 13); being subjected to punishment unconstitutionally disproportionate to his offenses (¶¶ 22, 84, 86, 103); and having been denied civil rights through the disciplinary investigation and adjudication process pursuant to a conspiracy (¶¶ 87-90, 101) in the context of having been subject to discipline by the D.C. Court of Appeals. Each and every allegation succeeds only to the extent that the D.C. Court of Appeals decided

the disciplinary cases improperly.  These allegations require this Court to sit in review of the

D.C. Court of Appeals, which, under *Rooker-Feldman,* is exactly what "the district court may

not do." *Feldman,* 460 U.S. at 483 n. 16.

## III.       RICHARDSON'S SUIT IS BARRED BY *RES JUDICATA*

Richardson's latest suit should be barred by *res judicata.* Even the issue of whether

*res judicata* applies to these claims has itself been fully litigated in this Court. *See Richardson*

*IV-C* slip op. at 6 n.3 (Ex. 13).   *Res judicata* applies both to the subject matter jurisdiction under

*Rooker-Feldman,* and to the merits of Richardson's claims. "In brief, the doctrine is designed to

*conserve judicial resources . . . and to prevent* serial forum-shopping and *piecemeal litigation."*

*Hardison v. Alexander,* 655 F.2d 1281, 1288 (D.C. Cir. 1981) (emphasis added).

As a preliminary matter, Richardson is precluded from disputing the application of

*Rooker-Feldman* to this case.  An issue is precluded if: (1) the issue was previously litigated

by the parties and (2) a court of competent jurisdiction actually and necessarily resolved the

issue, unless (3) preclusion would work a basic unfairness to the party bound.  *Yamaha Corp. of*

*Am. v. United States,* 961 F.2d 245, 254 (D.C. Cir. 1992).  "[T]he doctrine of *res judicata*

applies to dismissal for lack of jurisdiction as well as for other grounds." *Dozier v. Ford Motor*

*Co.,* 702 F.2d 1189, 1191 (D.C. Cir. 1983).

Applying that standard to the present facts, it is clear that Richardson is precluded from

contesting subject matter jurisdiction over any of his alleged civil rights violations. First, these

issues have been litigated previously (see Ex.s 5-14 and 18). That Richardson has joined

different defendants in his various suits does not affect this outcome; mutuality is not a

requirement in defensive collateral estoppel.  *See Blonder-Tongue Labs. Inc. v. Univ. of Ill.*

*Found.,* 402 U.S. 313, 3 24-25 (1971); *Consol. Edison Co. v. Bodman,* 449 F.3d 1254, 1259

(D.C. Cir. 2006). *See also Stanton v. D.C. Ct. of App.,* 127 F.3d 72, 77-78 (D.C. Cir. 1997)

(discussing both "claim preclusion" and "issue preclusion," or collateral estoppel, aspects of *res*

*judicata).* Second, each of Richardson's federal cases was finally decided against him on

*Rooker-Feldman* grounds.  Third, applying preclusion in this case causes no unfairness; to the

contrary, Richardson has repeatedly been instructed that the District Court has no jurisdiction

to hear a challenge to his disciplinary suspensions and even has been sanctioned for having

persistently ignored such holdings of this Court. *See Yamaha,* 961 F.2d at 254; *see also* Order,

*Richardson v. D.C. Court of Appeals,* No. 97-7242 (Mar. 25, 1999) (Ex. 17).

   *Res judicata* also applies substantively to the merits of Richardson's claims. Generally,

*res judicata* requires a final judgment on the merits by a court of competent jurisdiction.

*Stanton,* 127 F.3d at 77-78.  Under that principle, the previous federal suits dismissed on the

basis of *Rooker-Feldman* might only have preclusive effect as to jurisdiction (as discussed above).

However, in this case, the underlying principle (avoiding duplicative and piecemeal litigation)

should control.  *See Feldman,* 460 U.S. at 483 n.16 ("By failing to raise his claims in state court a

plaintiff may forfeit his right to obtain review of the state-court decision in any federal court.").

   All of these suits arose out of the same transactions. "Courts today are having

difficulty giving a litigant one day in court.  To allow that litigant a second day is a luxury that

cannot be afforded." *Stanton,* 127 F.3d at 77 (*quoting Nat'l Treasury Employees Union v. I.R.S.,*

765 F.2d 1174, 1177 (D.C. Cir. 1985). *See also* C. WRIGHT, LAW OF FEDERAL COURTS 678

(4th ed. 1983).  There is no legitimate reason why the present claims were not raised in the

previous suits. As this Court said in *Hardison:*

> Under [*res judicata*], the parties to a suit and their privies are bound by a final judgment
> and *may not relitigate any ground for relief which they already have had an opportunity*
> *to litigate* even if they chose not to exploit that opportunity whether the initial judgment
> was erroneous or not.

19

655 F.2d at 1288.  The only arguably "new" issue is Plaintiff's Eighth Amendment claim, which he

could have pursued as early as 1997, but elected not to.  *See* Cmplt ¶¶ 20-21 (alleging that

disproportionate suspensions involved period of 1-year and 10-months from June 1995 to April

1997).  As Judge Sporkin wrote in ordering the dismissal of *Richardson v. D.C. Bar,* No. 96-2286

*Richardson II-F*, "[N]o creative pleading on plaintiff's part can bring this matter within the

jurisdiction of this Court."  *Richardson v. D.C. Bar,* No. 96-2286, Order filed January 13, 1997

(Ex. 8).

Most (if not all) of Richardson's claims *have* been finally decided against him on the

merits by courts of competent jurisdiction, and all could have been brought in earlier proceedings.

The propriety of his various suspensions under D.C. and federal constitutional law was

necessarily decided by the D.C. Court of Appeals. (*See* Ex. 2; Ex. 11).  His claims associated

with the investigation for contempt and unauthorized practice of law were litigated at length, and

necessarily decided against him.  759 A.2d 649 (D.C. 2000). Specifically, the Circuit Court

held that no constitutional violation occurred with respect to the check and bank records

subpoena (*see* Ex. 9, at [*2-*3]), even though the District Court had originally dismissed

the case under *Rooker-Feldman* (*see* Ex. 8).

Finally, although Richardson did raise a challenge to the constitutionality of having

different disciplinary rules for reciprocal and original proceedings in his criminal contempt case,

the D.C. Court of Appeals did not find the need to reach the constitutional question because

Richardson had complied with neither rule.  759 A.2d at 653. *Cf.,* 83 F.3d 1513, 1516 (D.C.

Cir. 1996) (holding that Richardson's attack on the constitutionality of the disciplinary Bar Rules

is either barred by the *Rooker-Feldman* doctrine or by Richardson's lack of standing to bring this

attack since he is not a bar member subject to imminent application of these rules). *Res judicata* defeats all claims set forth in the Complaint.

## IV.   RICHARDSON HAS FAILED TO STATE A CLAIM ON WHICH RELIEF CAN BE GRANTED.

### A.   The Judicial Defendants Enjoy Absolute Immunity

Richardson seeks monetary damages for various alleged constitutional deprivations and conspiracies to commit such violations of his rights in the course of his disciplinary proceedings.  Judges enjoy absolute immunity from liability for damages for their acts done "in the exercise of their judicial functions."  *Bradley v. Fisher*, 13 Wall. 335, 347 (1872); *Pierson v. Ray*, 386 U.S. 547, 554 (1967) (judicial immunity applies in § 1983 litigation).  The applicability of judicial immunity turns on  "the character of the proceedings" in which the challenged act is performed.  *Feldman*, 460 U.S. at 477 (citing *Prentis v. Atlantic Coast Line*, 211 U.S. 210, 228 (1908)).  The investigation, declaration, and enforcement of  "liabilities as they stand on present or past facts and under laws supposed already to exist," as in the instance of attorney disciplinary proceedings, is a judicial inquiry.  *Id.*  Attorney disciplinary proceedings are state judicial proceedings. *See Middlesex County Ethics Comm. v. Garden State Bar Ass'n,* 457 U.S. 423, 432, (1982)).  Accordingly, the Judicial Defendants enjoy absolute immunity from Plaintiff's damages claims.

### B.   Richardson's Claims Are Time-Barred

Even if the *Rooker-Feldman* doctrine did not divest the Court of jurisdiction over Richardson's civil rights claims, the statute of limitations would do so. This is another issue that was fully litigated in *Richardson IV-C,* 05-0210 (ESH) slip op. at 3 (D.D.C. Mar. 30, 2005) (Ex. 13), and decided again in *Richardson V-A*, 06-1665 (RJL) slip op. at 6 n.7 (D.D.C. July 11, 2007) (Ex. 18).  Because Congress has not specified a statute of limitations for constitutional

claims, such as those brought under § 1983 or § 1985, 42 U.S.C. § 1988 instructs the courts to look to the local law's personal injury statute of limitations. *Owens v. Okure,* 488 U.S. 235, 249-50 (1989). If there is more than one statute of limitations for personal injury, then courts are to look to the general, residual limitations period. *Id.* D.C.'s local law provides for a three-year statute of limitations in D.C. Code § 12-301(8). *Richardson IV-C,* slip op. at 3 (Ex. 13); *Richardson V-A*, 06-1665 (RJL) slip op. at 6 n.7 (D.D.C. July 11, 2007) (Ex. 18). The most current claim asserted by Richardson arose out of his alleged discovery, in February 2003, of the 1992 disciplinary complaint made to Bar Counsel. Therefore, the limitations period for claims arising out of this discovery expired no later than February 2006, more than 3-1/2 years before this suit was filed.  Accordingly, the Complaint would properly be dismissed with prejudice as time-barred, if *Rooker-Feldman* did not determine that the Court lacks subject matter jurisdiction.

       **C.**     **Plaintiff Fails To State A Claim Against Any Individual Judicial Defendant**

Although it is not necessary for the plaintiff to plead all elements of his *prima facie* case in the complaint to survive a motion to dismiss, *Swierkiewicz v. Sorema N.A.,* 534 U.S. 506, 511-14 (2002), the plaintiff must allege "any set of facts consistent with the allegations" to stave off dismissal under Rule 12(b)(6),  *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 127 S.Ct. 1955, 1969, 167 L.Ed.2d 929 (2007).  *See also Aktieselskabet AF 21. Nov. 2001 v. Fame Jeans, Inc.,* 525 F.3d 8, 16 n. 4 (D.C.Cir.2008) ("a complaint needs *some* information about the circumstances giving rise to the claims"). In seeking to impose liability for damages, Plaintiff must establish liability specific to one or more individuals.  Yet, as to each of the individual Judicial Defendants, the Complaint fails to provide even "some information" about the circumstances giving rise to potential liability of any defendant.

22

Moreover, most of the individual Judicial Defendants - Judges Kramer, Fisher, Blackburne-Rigsby, Thompson, and Oberly - did not join the D.C. Court of Appeals until 2005 or later. Hence, Richardson cannot assert allegations that "plausibly give rise to an entitlement to relief" against these defendants. *See Iqbal* at 1949-50 (quoting *Twombly*, 550 U.S. at 570).

In fact, the only time that any individual Judicial Defendant is alleged to have done anything is in ¶ 4, which alleges that:

> the defendants are the District of Columbia [DC] and its subdivisions or agents: the D.C. Court of Appeals [DCCA] and Its Judges [*Chief* Hon. Eric T. Washington; *Associates:* Hon. Vanessa Ruiz, Hon. Inez Smith Reid, Hon. Stephen H. Glickman, Hon. Anketell Kramer, Hon, John R. Fisher, Hon. Anna Blackburne-Rigsby, Hon. Phyllis D. Thompson, and Hon. Kathryn A. Oberly], institutionally and individually as their interests may appear . . . .

Thus, none of the Judicial Defendants is alleged to have done anything other than to have been a judge of the D.C. Court of Appeals. None of these judges is alleged to have been a member of the panel that ordered his interim suspensions, to have adjudged him to be in criminal contempt, or to have been on the panel that affirmed his conviction. Accordingly, the Complaint fails even to set forth a short and plain statement of the claim, giving the defendant fair notice of the claim and the grounds upon which it rests, as required by Fed. R. Civ. P. 8(a). *See, e.g.*, *Kingman Park Civic Ass'n v. Williams,* 348 F.3d 1033, 1040 (D.C.Cir.2003) (citing Fed.R.Civ.P. 8(a)(2)).

Further, as set forth immediately above, each Judicial Defendant is entitled to absolute immunity and all of Plaintiff's claims are time-barred. The Complaint offers no factual allegations that could "plausibly give rise to an entitlement to relief" in light of the absolute immunity enjoyed by these defendants. *Id*. at 1949-50 (quoting *Twombly*, 550 U.S. at 570). The Complaint does not offer more than "a formulaic recitation of the elements of a cause of action" regarding Richardson's conspiracy claim. *See Iqbal*, 129 S. Ct. at 1949 (quoting *Twombly*, 550 U.S.

23

at 555).  Moreover, Judge Leon's *Richardson V-A* Memorandum Opinion clearly advised

Plaintiff that his claims were barred by the applicable statute of limitations.  Hence, this

Complaint should have asserted "sufficient factual matter, accepted as true" to provide a

plausible basis upon which its asserted claims would not be time-barred.  *Id.*  That the facts and

circumstances underlying the Complaint preclude Plaintiff from doing so does not enable him to

withstand a Rule 12(b) motion.

    Accordingly, the Complaint fails to state a claim against any of the individual Judicial

Defendants and should be dismissed as to each of them.

**V.     RICHARDSON CANNOT SECURE A CLASS CERTIFICATION**

    Richardson seeks certification of a class of people similarly seeking to collaterally

attack their suspension orders from the D.C. Court of Appeals.  Cmplt ¶¶ 106-08.  Just as the

*Rooker-Feldman* doctrine determines that this Court lacks subject matter jurisdiction over

Richardson's claims, it also dictates that the Court lacks subject matter jurisdiction over claims

of a class of persons seeking impermissible review of the D.C. Court of Appeals' decisions

regarding attorney discipline.  Establishing a court's subject matter jurisdiction over a putative

class's named representative is a prerequisite to certifying a class.  *See In re Lorazepam &*

*Clorazepate Anti-Trust Litigation*, 289 F.3d 98, (D.C. Cir. 2002) ("[B]ecause Article III standing

is one element of the court's subject matter jurisdiction, this requirement must be met before the

court can even examine whether the class has met the Rule 23 requirements.) (citing *Bertuli v.*

*Indep. Assoc. of Cont'l Pilots*, 242 F.3d 290 (5th Cir. 2001));  *Lindsay v. Gov't Employee Ins.*

*Co.*, 448 F.3d 416, 420 (D.C. Cir. 2006) ("Because subject matter jurisdiction is a prerequisite  to

class certification, it is property reviewed in a Rule 23(f) interlocutory appeal.").  As

24

demonstrated above, Richardson cannot establish jurisdiction over his own claims, much less

those of a class of similarly situated plaintiffs.  Accordingly, mo such class may be certified.

## CONCLUSION

For the reasons stated above, the Moving Defendants respectfully request that this Court

dismiss Richardson's complaint against them. Moving Defendants also ask that this Court grant

any additional relief it deems proper.

November 18, 2009                      Respectfully submitted,

                                       PETER J. NICKLES
                                       Attorney General for the District of
                                       Columbia

                                       GEORGE C. VALENTINE
                                       Deputy Attorney General
                                       Civil Litigation Division

                                       ____/s/   Ellen Efros_____
                                       ELLEN EFROS [250746]
                                       Assistant Deputy Attorney General
                                       Civil Litigation Division
                                       441 Fourth Street, NW, Sixth Floor South
                                       Washington, D.C. 20001
                                       (202) 442-9886

                                       s/ Thomas L. Koger
                                       THOMAS L. KOGER [427921]
                                       Assistant Attorney General
                                       Equity Section I
                                       441 Fourth Street, NW, Sixth Floor South
                                       Washington, D.C. 20001
                                       (202) 727-4170; (202) 741-5908 (Fax)
                                       Thomas.Koger@dc.gov

                                       *Counsel for Defendants District of Columbia,
                                       the District of Columbia Court of Appeals, Chief
                                       Judge Eric T. Washington and Associate Judges
                                       Vanessa Ruiz, Inez Smith Reid, Stephen H.
                                       Glickman, Noel Anketell Kramer, John. R. Fisher,
                                       Anna Blackburne-Rigsby, Phyllis D. Thompson and
                                       Kathryn A. Oberly*