# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| |
|---|
| T. CARLTON RICHARDSON, <br><br> Plaintiff, <br><br> v. <br><br> DISTRICT OF COLUMBIA, et al., <br><br> Defendants. |

Civil Action 09-01856 (HHK)

## MEMORANDUM OPINION

T. Carlton Richardson's license to practice law has been suspended as a result of disciplinary proceedings brought against him in Florida and in the District of Columbia. *See In re Richardson*, 692 A.2d 427 (D.C. 1997). He brings this action against entities and individuals involved in the District of Columbia proceedings, including the District of Columbia Court of Appeals—as an institution and its judges, individually—the District of Columbia Board on Professional Responsibility, the Office of Bar Counsel, the District of Columbia Bar, and several individuals presently or formerly associated with these entities (collectively "defendants"). Proceeding pro se, Richardson, in an extraordinarily prolix complaint, alleges numerous causes of action, including "various common law torts (including, but not limited to—wrongful conviction; civil conspiracy; fraud, deceit, and misrepresentation; abuse and misuse of official authority and fraud upon the courts)" as well as "U.S. Constitutional and federal statutory torts[,] including but not limited to[,] violations of the plaintiff's rights to due process, fair trial procedures and other civil rights secured to the plaintiff under the 4th, 5th, 6th, and 8th Amendments, as well as the Civil Rights Act, [42] U.S.C. §1983." Compl. at 3.

Before the Court are defendants' motions to dismiss [## 25, 26]. Upon consideration of the motions, the oppositions thereto, and the record of this case, the Court concludes that the motions must be granted.

## I. BACKGROUND

Richardson was temporarily suspended from practicing law in Florida in 1990 for charging his clients a "clearly excessive fee." *See Fla. Bar v. Richardson*, 574 So. 2d 60 (Fla. 1990). Richardson filed his first of many cases in this Court when he "challenge[d] the procedures and results of the Florida disciplinary proceedings on federal antitrust and constitutional grounds." *Richardson v. Fla. Bar*, 1990 WL 116727, at *2 (D.D.C. May 15, 1990). Finding that the case was "a poorly-veiled attempt to obtain collateral, pseudo-appellate review of the Supreme Court of Florida's . . . decision," *Id.* at *2, this Court dismissed Richardson's complaint for lack of jurisdiction.

After Richardson's suspension in Florida, the District of Columbia Board on Professional Responsibility ("the Board") recommended that Richardson face reciprocal discipline in the District of Columbia, and the D.C. Court of Appeals accordingly imposed a ninety-one day suspension. *See In re Richardson*, 602 A.2d 179, 180 (D.C. 1992). While another complaint against Richardson for charging excessive fees was pending before the Florida Bar, *see Fla. Bar v. Richardson*, 604 So. 2d 489 (Fla. 1992), Richardson filed a petition for resignation from that bar, which the Supreme Court of Florida granted in 1992.

On June 27, 1995, the D.C. Court of Appeals temporarily suspended Richardson from the practice of law in the District to enable the Board to consider whether it would impose reciprocal discipline against him in the District based on his resignation from the Florida Bar while

2

disciplinary charges were pending there. In *Richardson v. D.C. Court of Appeals*, Civ. No. 95-1272, slip op. (D.D.C. 1996) ("*Richardson I*"), Richardson challenged the temporary suspension in this Court, "alleging that [the] suspension, and the D.C. Bar rule that permits it . . . unconstitutionally deprive[d] him, without due process, of his liberty interest in practicing law." *Richardson v. D.C. Court of Appeals*, 83 F.3d 1514, 1514 (D.C. Cir. 1996). This Court dismissed Richardson's suspension claim for lack of jurisdiction based on the *Rooker-Feldman* doctrine and abstained from hearing his claim regarding the unconstitutionality of the D.C. Bar rule under *Younger v. Harris*, 401 U.S. 37 (1971). *See id.* Affirming this Court's decision, the D.C. Circuit held that this Court lacked jurisdiction of both of Richardson's claims because they fell "squarely within the *Rooker-Feldman* doctrine, under which federal district courts lack jurisdiction to review judicial decisions by state and District of Columbia courts." *Richardson v. D.C. Court of Appeals*, 83 F.3d at 1514.[1]

The D.C. Court of Appeals temporarily suspended Richardson from the District of Columbia Bar again on March 12, 1996. *See Richardson v. D.C. Court of Appeals*, 962 F. Supp. 1, 1 (D.D.C. 1997) ("*Richardson II*"). In response, Richardson filed another action in this Court, this time challenging the constitutionality of the second interim suspension order that the D.C. Court of Appeals imposed in accordance with D.C. Bar Rule XI § 11(d). *Id.* Richardson argued that the D.C. Court of Appeals did not provide him a hearing before temporarily suspending him, thereby violating his Fourteenth Amendment right to due process. This Court dismissed the complaint, noting that Richardson had not "distinguished this case from the suit he [previously] brought" challenging the first suspension, which was dismissed by this Court on jurisdictional

---

[1] The D.C. Circuit did not reach the issue of *Younger* abstention.

3

grounds and affirmed by the D.C. Circuit. *Id.* Again, Richardson appealed and the D.C. Circuit summarily affirmed. *See Richardson v. D.C. Court of Appeals*, 1997 WL 811754, at *1 (D.C. Cir. Dec. 9, 1997) (stating that because Richardson's "general constitutional challenge . . . is inextricably intertwined with [previous D.C. Court of Appeals] decisions, the district court correctly found jurisdiction lacking").

During Richardson's second interim suspension, the D.C. Office of Bar Counsel began investigating allegations that Richardson had continued to practice law despite the interim suspension orders. The Bar Counsel had obtained a copy of a check that Richardson had written for a Continuing Legal Education ("CLE") class and it was used in contempt proceedings brought against him. In response, Richardson again filed suit in this Court, this time against the D.C. Bar, two employees of the Office of Bar Counsel, and the Clerk of the D.C. Court of Appeals. Richardson alleged that conduct related to this investigation, specifically the D.C. Bar's provision of "a copy of a personal check to the Office of Bar Counsel," which revealed information that was used to obtain a subpoena for Richardson's bank records, constituted an invasion of his privacy and a violation of his constitutional rights under the Fourteenth Amendment. *See* Compl. ¶¶ 1-10, *Richardson v. D.C. Bar*, No. 96-2286 (D.D.C. Jan. 13, 1997). This case was dismissed for failure to state a claim and the Circuit Court again summarily affirmed the dismissal. *See Richardson v. D.C. Bar*, No. 96-2286, slip op. (D.D.C. Jan. 13, 1997), *aff'd*, *Richardson v. D.C. Bar Ass'n*, 1997 WL 404321, at *1 (D.C. Cir. June 30, 1997).

On April 17, 1997, the D.C. Court of Appeals imposed final discipline against Richardson, suspending him from practicing law in the District of Columbia for three years with reinstatement conditioned on proof of fitness. *In re Richardson*, 692 A.2d at 428, *cert. denied,* 522 U.S. 1118 (1998).

4

Undeterred, in 2006, Richardson filed another case in this Court related to the bar disciplinary proceedings that had been brought against him. Richardson alleged that his "civil rights were violated when he was suspended from the District of Columbia Bar, and that these violations have continued throughout the proceedings in his subsequently filed civil litigation."[2] *Richardson v. District of Columbia*, 2007 WL 2007591, at *2 (D.D.C. July 11, 2007) ("*Richardson V*"), aff'd, *Richardson v. District of Columbia*, 2008 WL 2396186, at *1 (D.C. Cir. Feb. 13, 2008). Richardson's civil rights claims were dismissed on *Rooker-Feldman* grounds. The Court observed that "the issue of whether the district court has jurisdiction to review the state court decision has previously been litigated four times."[3] *Id.*

Again, undeterred, Richardson filed the instant case asserting, once more, claims arising from bar disciplinary proceedings against him that resulted in his suspension.

---

    2      In this suit, Richardson also attempted to "seek[] reinstatement of his prior habeas petition," based on "newly discovered evidence" that would justify revisiting this Court's 2001 dismissal of his habeas claims. *Richardson v. District of Columbia*, 2007 WL 2007591, at *1-2. The Court dismissed this claim and Richardson does not re-allege it in this case.

    3      The Court summarized the history of the suits brought by Richardson challenging his suspension in this Court:
> Plaintiff's previous challenges in this District Court to the constitutionality of his suspension were dismissed for lack of jurisdiction under the *Rooker-Feldman* doctrine, which prohibits federal district courts from reviewing judicial decisions of state and local courts, as well as all claims intertwined with that judicial action. *See Richardson v. D.C. Court of Appeals*, No. 95-1272, slip op. (D.D.C. 1996) ("*Richardson I*") (Hogan, J.) (discussing *Rooker v. Fidelity Trust Co.*, 263 U.S. 413 (1923); *D.C. Court of Appeals v. Feldman*, 460 U.S. 462 (1983)), aff'd, *Richardson v. D.C. Court of Appeals*, 83 F.3d 1513 (D.C. Cir.1996); *Richardson v. D.C. Court of Appeals*, 962 F. Supp. 1 (D.D.C 1997) (Sporkin, J.) ("*Richardson II*"); *Richardson v. D.C. Court of Appeals*, No. 04-0101, slip op. (D.D.C. Mar. 31, 2004) (Huvelle, J.) ("*Richardson III*"); *Richardson v. Dist. of Columbia*, No. 05-0210, slip op. (D.D.C. Mar. 29, 2005) (Huvelle, J.) ("*Richardson IV*").

*Richardson v. District of Columbia*, 2007 WL 2007591, at *1 (D.D.C. July 11, 2007) ("*Richardson V*"), aff'd, *Richardson v. District of Columbia*, 2008 WL 2396186, at *1 (D.C. Cir. Feb. 13, 2008).

## II. ANALYSIS

Defendants move to dismiss Richardson's complaint on multiple grounds. First, pursuant to Rule (12)(b)(1) of the Federal Rules of Civil Procedure, defendants argue that this Court lacks subject matter jurisdiction because of the *Rooker-Feldman* doctrine. Defendants assert that the doctrine operates to deprive this Court of subject matter jurisdiction because all of Richardson's claims are premised on, or are inextricably intertwined with, proceedings involving claims resolved by the D.C. Court of Appeals or that court's decision affirming Richardson's criminal contempt conviction. Second, defendants assert that Richardson's claims should be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(6) on *res judicata* grounds. Finally, defendants argue that each defendant enjoys absolute immunity from Richardson's claims. Each argument will be addressed in turn.

**A.**     ***Rooker-Feldman***

Under the *Rooker-Feldman* doctrine, this Court is not able to exercise jurisdiction over actions that essentially seek "appellate review of [a] state judgment . . ., based on the losing party's claim that the state judgment itself violates the loser's federal rights," *Johnson v. De Grandy*, 512 U.S. 997, 1005-06 (1994), or over claims that are "inextricably intertwined" with the state court judgment, *D.C. Court of Appeals v. Feldman*, 460 U.S. 462, 486-88 (1983). Defendants argue that because Richardson's claims directly attack, or are "inextricably intertwined" with, decisions of the D.C. Court of Appeals, his claims fall squarely within the *Rooker-Feldman* doctrine.[4] Defendants are correct. In a nutshell, Richardson essentially asks

---

[4] According to Richardson, "[a]ll [of his] claims arise out of the "wrongful revocation of [his] law license." Compl. at ¶ 10. Richardson's claims that challenge the D.C. Court of Appeals decision to suspend his license, or are "inextricably intertwined" with that

this Court to review decisions of the D.C. Court of Appeals, which the Court "may not do." *See Feldman*, 460 U.S. 462, 483 n.16 (1983).

Moreover, the application of the *Rooker-Feldman* doctrine has been previously litigated and decided against Richardson with respect to the same claims, or those that are inextricably intertwined with such claims, as he raises here. Richardson, therefore, is precluded from relitigating the doctrines's application to this case. *See GAF Corp. v. United States*, 818 F.2d 901, 912 (D.C. Cir. 1987) (stating that a judgment ordering dismissal has "preclusive effect as to matters actually adjudicated; it will . . . preclude relitigation of the *precise issue of jurisdiction* that led to the initial dismissal.") (emphasis added).

Richardson argues that the Supreme Court's decision in *Exxon Mobil Corp. v. Saudi Basic Industries Corp.*, 544 U.S. 280 (2005), alters the legal landscape to his advantage insofar as the proper application of the *Rooker-Feldman* doctrine is concerned. According to Richardson, *Exxon Mobil* "add[s] a third plank to [the *Rooker-Feldman*] analysis." Pl.'s Combined Resp. to D.C. Bar Regulators' [1] Reply to Opp'n. To Pl.'s Mots. For Leave to Take

---

decision, include his claims that: (1) his suspension proceedings were procedurally inadequate under the D.C. Code, the Due Process Clause of the Fifth Amendment, and the Equal Protection Clause; (2) the D.C. Court of Appeals suspended him "without notice and an evidentiary hearing" in violation of the Due Process Clause and the D.C. Code; (3) his three-year suspension period violated his Fifth Amendment due process and Eighth Amendment rights; (4) Bar prosecutors' "concealing the existence of and failing to disclose [ ] records" was a "violation of due process," rendering the D.C. Court of Appeals' "reciprocal disciplinary orders . . . void"; and (5) his license suspension violated the Equal Protection Clause.

    Richardson's claim that Bar Counsel participated in an "illegal search and seizure" of his bank records was litigated in the D.C. Courts in the context of Richardson's criminal contempt proceedings. *See In re Richardson*, 759 A. 2d 649, 654 (D.C. 2000). His additional claim that the criminal contempt conviction violated his due process rights because the hearing was conducted by one judge instead of three is also barred by *Rooker-Feldman* as it is inextricably intertwined with the D.C. Court of Appeals' decision upholding his conviction.

Disc. and [2] Cross-Mot. to Dismiss ("Pl.'s Opp'n") at 2 n.3. Richardson relies heavily on the following language in *Exxon Mobil* in support of his argument that the *Rooker-Feldman* doctrine does not bar this Court from considering his claims. The *Exxon Mobil* Court states that:

> [i]n parallel litigation, a federal court may be bound to recognize the claim- and issue-preclusive effects of a state-court judgment, but federal jurisdiction over an action does not terminate automatically on the entry of judgment in the state court.
>
> Nor does [28 U.S.C.] § 1257 stop a district court from exercising subject-matter jurisdiction simply because a party attempts to litigate in federal court a matter previously litigated in state court. If a federal plaintiff "present[s] some *independent claim*, albeit one that denies a legal conclusion that a state court has reached in a case to which he was a party . . . , then there is jurisdiction and state law determines whether the defendant prevails under principles of preclusion."

*Exxon Mobil*, 544 U.S. at 293 (internal citations omitted) (emphasis added). Richardson's reliance on *Exxon Mobil* is misplaced.

In *Exxon Mobil*, Saudi Basic Industries Corporation (SABIC) sued Exxon Mobil in a Delaware state court seeking a declaratory judgment that it did not overcharge Exxon Mobil for royalties. Exxon Mobil countersued SABIC in federal court in New Jersey two weeks later, before any judgment was entered in state court, in an attempt to "protect itself in the event it lost in state court on grounds (such as the state statute of limitations) that might not preclude relief in the federal venue." *Id.* at 289, 293-94. Exxon Mobil answered SABIC's state court complaint by "asserting as counterclaims the same claims [it] had made in the federal suit in New Jersey." *Id.* Before the state court trial, SABIC moved to dismiss the federal suit on, *inter alia*, immunity grounds under the Foreign Sovereign Immunities Act, which the District Court denied. *Id.* SABIC then took an interlocutory appeal to the Third Circuit. *Id.* at 289. In the interim, the state court found for Exxon Mobil, and SABIC appealed to the Delaware Supreme Court. *Id.* After the state court verdict, the Third Circuit, *sua sponte*, held that federal jurisdiction terminated

when the Delaware state court entered judgment. *Id.* The Supreme Court reversed this decision, reasoning that, "[w]hen there is parallel state and federal litigation, *Rooker-Feldman* is not triggered simply by the entry of judgment in state court." *Id.* at 292. *Exxon Mobil* reaffirmed, however, that the *Rooker-Feldman* doctrine is appropriately, though narrowly, applied to "cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." *Exxon Mobil*, 544 U.S. at 284.

It is evident that *Exxon Mobil* provides no support for Richardson's position that the *Rooker-Felman* doctrine does not bar this Court from exercising jurisdiction over his claims. Here there is no parallel litigation with any action in a D.C. Court. And, of more significance, this case falls precisely within the category of cases that *Exxon Mobil* affirms are precluded from review by a federal court—"state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." *Id.* at 1521-22. Moreover, while *Exxon Mobil* affirms that a federal court may exercise jurisdiction over claims independent from claims that were the subject of a judgment in a state or D.C. court, such affirmation does not help Richardson whose claims here were the subject of decisions by the D.C. Court of Appeals, or they are so "inextricably intertwined" with those decisions that this Court cannot review them.

Richardson's only claims that are arguably distinguishable from his challenge of judgments of the D.C. Court of Appeals are those that relate to the alleged unconstitutionality of certain D.C. Bar rules. This Court does not have jurisdiction to hear these claims.

9

In *Feldman*, the Supreme Court recognized that, although a federal district court may have subject matter jurisdiction over a *general* challenge to the constitutionality of a state bar rule, a District Court may not review the state court's decision where the constitutional claims are "inextricably intertwined with the state court's denial in a judicial proceeding of a particular plaintiff's application for admission to the state bar." *Feldman*, 460 U.S. at 483 n.16. If the Court were to do so, it would "in essence be[ ] called upon to review the state court decision." *Id.* As the D.C. Circuit held in one of Richardson's previous cases, "Richardson's attacks on [the D.C. Bar rules'] constitutionality . . . are not merely intertwined with his attack on the decision to suspend him but are one and the same . . . . His attack on the rule cannot be contemplated without his attack on his suspension." *Richardson v. D.C. Court of Appeals*, 83 F.3d at 1515-16. *Exxon Mobil* reiterates that a plaintiff may separately maintain those claims challenging bar rules as unconstitutional *only* where "those claims 'do not require review of a judicial decision in a particular case.'" *Exxon Mobil*, 544 U.S. at 286-87 (quoting *Feldman*, 460 U.S. at 487).

**B.**   ***Res Judicata***

Under Rule 12(b)(6) of the Federal Rules of Civil Procedure, a court may dismiss a complaint, or any portion of it, for failure to state a claim upon which relief may be granted. Fed. R. Civ. P. 12(b)(6). A court considering a motion to dismiss pursuant to Rule 12(b)(6) must assume that all factual allegations in the complaint are true, even if they are doubtful. *Twombly*, 550 U.S. 544, 555 (2007). Richardson's complaint fails to state a claim because all of Richardson's claims are barred either under the doctrine of claim preclusion or issue preclusion, collectively referred to as *res judicata*. *See Taylor v. Sturgell*, 128 S. Ct. 2161, 2171 (2008). Under the doctrine of claim preclusion, a final judgment "forecloses 'successive litigation of the

10

very same claim, whether or not relitigation of the claim raises the same issues as the earlier suit.'" *Id.* (quoting *New Hampshire v. Maine*, 532 U.S. 742, 748 (2001)). Issue preclusion bars "successive litigation of an issue of fact or law actually litigated and resolved in a valid court determination essential to the prior judgment." *Id.*

      **1.**      **Claim Preclusion**

Under claim preclusion, "a subsequent lawsuit will be barred if there has been prior litigation (1) involving the same claims or cause of action, (2) between the same parties or their privies, and (3) there has been a final, valid judgment on the merits, (4) by a court of competent jurisdiction." *Smalls v. United States*, 471 F.3d 186, 192 (D.C. Cir. 2006) (citing *Blonder-Tongue Labs., Inc. v. Univ. of Ill. Found.*, 402 U.S. 313, 323-24 (1971)). "[A] final judgment on the merits of an action precludes the parties or their privies from relitigating issues that *were or could have been raised* in that action." *Allen v. McCurry*, 449 U.S. 90, 94 (1980) (emphasis added). In this action, Richardson reasserts several claims against the same parties that have been previously decided on the merits, and some claims that are newly raised but are transactionally related to the previous claims and thus could have been brought in Richardson's earlier suits.

           **i.**      **Fourth Amendment Claims**

Richardson alleges that D.C. Bar Counsel and defendant Shiskevish, the director of the D.C. Bar's CLE office, violated his Fourth Amendment rights by participating in "[a]n illegal search and seizure" in which Bar Counsel "subpoenaed Richardson's bank records" based on account information that appeared on a check written by Richardson and provided to Bar Counsel by Shiskevish. Compl. at ¶¶ 68-70. Richardson grounds his alleged Fourth Amendment

violations on (1) "the sharing of information between the CLE[ ] office of the D.C. Bar and [B]ar prosecutors [ ] without Richardson's consent;" (2) the subpoenaing of his bank accounts based on information revealed by the check he had written; and (3) a "violat[ion of Richardson's] investigatory due process rights" resulting from the issuance of the subpoenas, "under D.C. [Bar Rule]<sup>5</sup> XI § 6(a)(2), which prohibits discovery until after an accused attorney has responded."[6] Compl. ¶ 73. All of Richardson's Fourth Amendment claims are without merit, and have been decided by prior court decisions.

As for Richardson's claim that the Bar Counsel violated his Fourth Amendment rights by obtaining a copy of his check from Shiskevish, the D.C. Circuit held that because Richardson "neither owned nor possessed the check used to institute the investigation or the bank records which were subpoenaed" his "privacy rights under either the Fourth or Fifth Amendments" were not implicated. *Richardson v. D.C. Bar Ass'n*, 1997 WL 404321, at *1. Similarly, as to Richardson's argument that the issuance of a subpoena of his bank records by an Assistant Bar Counsel based on information found on the check violated Richardson's Fourth Amendment rights, the D.C. Court of Appeals held that Richardson's argument was without merit. *See In re Richardson*, 759 A.2d at 654. The Court reasoned that a "depositor has no expectation of privacy and thus no 'protectable Fourth Amendment interest' in copies of checks and deposit slips retained by his bank." *Id.* (citing *United States v. Payner*, 447 U.S. 727, 732 (1980); *United States v. Miller*, 425 U.S. 435, 437 (1976)).

---

[5] Richardson cites "D.C. Code XI § 6(a)(2)," but the Court assumes Richardson intends to reference D.C. Bar Rule XI § 6(a)(2), which states that "no disposition shall be recommended or undertaken by Bar Counsel until the accused attorney shall have been afforded an opportunity to respond to the allegations." D.C. Bar Rule XI § 6(a)(2).

[6] Richardson groups this claim under a Fourth Amendment heading, so the Court addresses it here.

12

Finally, as to Richardson's argument that the issuance of the subpoenas was undertaken in contravention of D.C. Bar Rule XI § 6(a)(2), the D.C. Court of Appeals specifically noted in 2000 that Bar Counsel "followed the procedure for obtaining records by subpoena outlined in Bar Rule XI, § 18 (2000)." *Id.* at n.4.[7]

Because this Court has determined, and the D.C. Circuit has affirmed, that Richardson had no Fourth Amendment interest at stake related to the check or his bank records, the Court cannot hear Richardson's renewed Fourth Amendment claims against Bar Counsel here. Additionally, because the D.C. Circuit previously held that Richardson had no privacy interest in the check, Richardson also fails to state a claim against Shishkevish.[8] *See Richardson v. D.C. Bar Ass'n*, 1997 WL 404321, at *1 (holding that defendants' alleged actions "did not violate [Richardson's] privacy rights under either the Fourth or Fifth Amendments because he neither owned nor possessed the check" and that the "dismissal of [Richardson]'s complaint was proper because the complaint failed to state a claim upon which relief could be granted").

### ii. Due Process Claims

Richardson further asserts that his due process rights were violated by the D.C. Court of Appeals when it suspended him "without notice" and without an evidentiary hearing, in contravention of the Fifth Amendment and D.C. Code § 11-2503(b). Compl. at ¶¶ 54, 59-61.

---

[7] Further, Rule XI § 6(a)(2) states, in relevant part, that "no disposition [of an investigation] shall be recommended or undertaken by Bar Counsel until the accused attorney shall have been afforded an opportunity to respond to the allegations." D.C. Bar Rule XI § (6)(a)(2). This clause of the rule, on its face, does not relate to the issuance of subpoenas, or the taking of any other intermediate steps before recommending a disposition in an investigation. Thus, Richardson's reliance on § 6(a)(2) in connection with a Fourth Amendment claim is misplaced, and his argument is without merit.

[8] Richardson's only discernible claim against Shiskevish is that she provided Bar Counsel with a copy of Richardson's check that was on file with the CLE office. *See* Compl. at ¶¶ 69-75.

13

The D.C. Court of Appeals considered and rejected these arguments in 1997:

> Nothing in our rules governing reciprocal discipline is at all inconsistent with the procedural requirements of this statutory provision. . . . the statute expressly permits this court to "suspend the person charged from practice at [the] bar pending the hearing," D.C. Code § 11-2503(b)—clear authority for a temporary suspension under D.C. Bar R. XI § 11(d) pending final disposition of the reciprocal disciplinary proceeding. Such authority does not violate the Due Process Clause.

*See In re Richardson*, 692 A.2d at 430; *see also id.* at 433-35 (rejecting Richardson's due process challenges). Similarly, dating back to 1997, this Court observed that Richardson received ample due process. *See Richardson II*, 962 F. Supp. at 2, n.2.[9]

Furthermore, although Richardson adds a passing reference to the Sixth Amendment in relation to his due process claim, *see* Compl. at ¶ 10 ("[t]hose investigatory and adjudicatory improprieties involved the denial of certain due process (under 5th Amd. generally–adequate notice and prior evidentiary hearing) and fair trial procedures [under 6th Amd. (to confrontation),") *see also* Compl. at ¶ 23, he does not offer any legal or factual support for this claim. In this regard, therefore, Richardson fails to state a claim arising out of the Sixth Amendment. *See* Fed. R. Civ. P. 8; *Twombly,* 550 U.S. at 555 ("factual allegations must be enough to raise a right to relief above the speculative level").

---

[9] In *Richardson II*, the Court did not reach the merits of Richardson's due process claims. The Court did note, however, that "[a]lthough Plaintiff did not appear in person before the D.C. Court of Appeals before the temporary suspension was first initiated, he was given notice and did respond to that notice in writing. It was the opportunity to respond in writing that constituted Plaintiff's due process. He was granted further due process when he appeared before the D.C. Court of Appeals for a post-deprivation hearing." *Richardson II*, 962 F. Supp. at 2 n.2.

### iii. Remaining Tort Claims

The doctrine of claim preclusion prevents a claimant who has litigated a claim to judgment once from litigating the same claim in a subsequent suit involving the same parties or their privies based on the same cause of action litigated in the prior suit. *Drake v. FAA*, 291 F.3d 59, 66 (D.C. Cir. 2002). The claimant is also precluded from bringing claims that arise from the same nucleus of facts upon which the prior litigation is based. *Id*. In order to determine whether a subsequent cause of action arises from "the same nucleus of facts" that give rise to the first suit, the Court will look to "whether the facts are related in time, space, origin, or motivation, whether they form a convenient trial unit, and whether their treatment as a unit conforms to the parties' expectations or business understanding or usage." *Apotex, Inc. v. FDA*, 393 F.3d 210, 217 (D.C. Cir. 2004) (internal citations omitted).

With one exception that is discussed *infra* Part B.2.ii, Richardson's claims here arise out of the same cause of action and the same nucleus of facts, the proceedings leading to his 1997 final suspension, that have been the subject of prior court decisions. *See* Compl. at ¶ 10 ("All claims arise out of the wrongful revocation of Richardson's law license").

To the extent that the basis of Richardson's tort claims are set forth and capable of being understood—"wrongful conviction; civil conspiracy; fraud, deceit and misrepresentation; abuse and misuse of official authority," *see* Compl. at ¶ 1—they are just second, third, or fourth attempts to recast allegations that Richardson has previously raised or could have raised in prior lawsuits. *See, e.g.*, *Richardson II*, 962 F. Supp. at 2 (noting that Richardson, after "having previously been rebuffed by [this Court] and the D.C. Circuit" was "trying to get, at the very least, a second bite at the apple" by bringing the "same action again"). Regardless of whether

15

particular claims have been decided on the merits, claim preclusion bars Richardson from bringing related claims in this suit.

2.  **Issue Preclusion**

Res judicata precludes the relitigation of an issue so long as (1) it was previously contested by the parties and submitted for judicial determination; (2) it was actually and necessarily decided by a court of competent jurisdiction; and (3) preclusion does not work a "basic unfairness to the party bound by the first determination." *See Yamaha Corp. of Am. v. United States*, 961 F.2d 245, 254 (D.C. Cir. 1992). Several of the claims Richardson raises now are necessarily precluded because the issue of whether this Court has jurisdiction to hear them has already been decided against Richardson.

i.  **Issue of Court's Jurisdiction Over Eighth Amendment and Civil Rights Claims Precluded**

To reiterate, an earlier judgment ordering dismissal on jurisdictional grounds in litigation between the same parties "preclude[s] relitigation of the precise issue of jurisdiction that led to the initial dismissal." *GAF Corp. v. United States*, 818 F.2d 901, 912 (D.C. Cir. 1987); *see also Dozier v. Ford Motor Co.*, 702 F.2d 1189, 1191 (D.C. Cir. 1983). Thus, the issue of this Court's jurisdiction to hear Richardson's Eighth Amendment claim, asserting that his "penalties [were] grossly disproportionate to the offense," Compl. ¶¶ 84-86, is precluded. This claim has been raised previously by Richardson and the question of this Court's jurisdiction to hear it has already been litigated and decided. *See Richardson IV*, No. 05-0210, slip op. at 3 ("As for any other Eighth Amendment challenge to his suspension . . . federal courts do not have jurisdiction to review state court judgments *even where a constitutional violation is alleged*.").[10]

---

[10] In addition to arguing that the penalties to which he was subjected was disproportionate, Richardson's complaint challenges the "illegal disciplinary sanction" of the

16

Richardson also raises civil rights claims, arguing that he suffered "[c]ivil rights violations of a due process and equal protection nature aris[ing] out of the nondisclosure and concealment of illegal disciplinary investigations and procedures conducted by bar prosecutors and the Board." Compl. ¶¶ 87-105. In 2007, this Court dismissed Richardson's virtually identical civil rights violation claims,[11] holding again that this Court could not hear this claim as the "issue of jurisdiction necessarily has been determined by the appropriate courts." *See Richardson*, 2007 WL 2007591, at *2, *aff'd*, *Richardson v. District of Columbia*, 2008 WL 2396186, at *1 (D.C. Cir. 2008) ("[A]ppellant's civil rights claims . . . are barred by the collateral estoppel doctrine."). The Court finds again that Richardson is precluded from raising these issues.

### ii. Prosecutorial Misconduct and Fraud on the Courts Claims Precluded

Richardson has only one discernible post-1997 suspension issue—that Bar Counsel "obstructed justice" and perpetrated a "fraud upon the court[]" by not disclosing the existence of an undocketed 1992 investigation until 2003, *see* Compl. ¶¶ 49-51—but this too is precluded.

---

D.C. Court of Appeals' interim suspension and its automatic extension for his failure to file a required registration statement. *See* Compl. ¶¶ 78-83. The issue of this Court's jurisdiction to hear Richardson's allegations regarding the automatic extension of his license revocation has already been decided—twice. *See Richardson IV*, No. 05-0210, slip op. at 2-4 (noting Richardson's "disproportionate penalty" claim appeared "to be based on the automatic extension of his license revocation for noncompliance with a D.C. Bar Rule . . . the exact argument—and even the same rule [14(f)]—that was addressed and rejected by this Court in *Richardson III*."). In *Richardson III*, No. 04-0101, slip op. at 4, the Court likewise abstained from hearing this particular challenge on *Rooker-Feldman* grounds.

[11] The Court notes that Richardson's statement of his claims relating to the alleged civil rights violations appears to be lifted almost verbatim from his 2006 complaint. *Compare* Compl. ¶¶ 87-105 *with* Compl. ¶¶ 71-91, *Richardson v. District of Columbia*, 2007 WL 2007591 (D.D.C. July 11, 2007).

17

Richardson has raised this issue before, *see, e.g.*, Compl. ¶ 4.1, *Richardson IV*, No. 05-0210 (D.D.C. 2005) ("fraudulent misrepresentation" and "nondisclosure and concealment"), *id.* ¶ 4.5 ("prosecutorial misconduct"); Compl. ¶¶ 31-32, *Richardson V*, 2007 WL 2007591 (D.D.C. 2007) (No. 06-1665) ("prosecutorial misconduct"; *id.* ¶ 33 ("fraud upon the courts")); however, this Court addressed its jurisdiction to hear it in 2005:

> Plaintiff claims that he had not been informed of the existence of the 1992 investigation prior to [2003] and that this fact gives rise to a fraudulent nondisclosure and even a civil conspiracy claim. [ ] But regardless of when plaintiff discovered the facts underlying his claims, it remains that these procedural challenges are inextricably intertwined with the suspension itself.

*Richardson IV*, No. 05-0210, slip op. at 5. Though Richardson styled this claim as a "fraudulent misrepresentation" in 2005, *see* Compl. ¶ 4.1, *Richardson IV*, No. 05-0210, it arises from the same facts and circumstances as his most recent "prosecutorial misconduct," "obstruct[ion] [of] justice," and "fraud upon the courts" claims here. *See* Compl. ¶¶ 49-51. Thus, the Court's judgment as to its jurisdiction to hear this issue in 2005 precludes Richardson from raising the issue again.

**C.     Absolute Immunity**

Defendants argue that they are entitled to absolute immunity from Richardson's claims. Defendants are correct. Both the D.C. Court of Appeals judges and the non-judicial defendants are entitled to absolute immunity.

**1.     D.C. Court of Appeals Judges**

The D.C. Court of Appeals judges are absolutely immune from causes of action asserted in this case based on their decisions leading to Richardson's suspension. *See Pierson v. Ray*, 386 U.S. 547, 553-54 (1967) ("[I]mmunity of judges for acts within the judicial role is well

18

established . . . . Few doctrines were more solidly established at common law than the immunity of judges from liability for damages for acts committed within their judicial jurisdiction." (citing *Bradley v. Fisher*, 13 Wall. 335 (1872))). In *Feldman*, the Supreme Court analyzed the question of whether bar admission proceedings were judicial in nature, and found that they were. *See Feldman*, 460 U.S. at 479. The Court in *Feldman* determined that the proceedings under consideration involved a judicial inquiry because "the court was called upon to investigate, declare, and enforce 'liabilities as they [stood] on present or past facts and under laws supposed already to exist.'" *Id.* (internal citations omitted). In determining to suspend Richardson, the judges of the D.C. Court of Appeals engaged in the same kind of judicial inquiry.

### 2. Non-Judicial Defendants

The non-judicial defendants in this case are also entitled to absolute immunity. D.C. Bar Rule XI § 19(a) provides that "Members of the Board [on Professional Responsibility], its employees, members of Hearing Committees, Bar Counsel, and all assistants and employees of Bar Counsel . . . shall be immune from disciplinary complaint under this rule and from civil suit for any conduct in the course of their official duties." D.C. Bar Rule XI § 19(a). This Court has recognized the absolute immunity this Rule provides. *See, e.g.*, *Thomas v. Knight*, 257 F. Supp. 2d 86, 94 (D.D.C. 2003). The Rule provides immunity to Members of the Board and Bar Counsel on its face, but similarly, as the D.C. Court of Appeals has recognized, absolute immunity extends to defendant Shiskevish for her acts related to providing a copy of Richardson's check to Bar Counsel. *See In re Spikes*, 881 A.2d 1118, 1123-24 (D.C. 2005) (citing *In re Nace*, 490 A.2d 1120, 1123-24 (D.C. 1985)) (stating that section 19(a) immunity extends to those who provide information to the Board or to Bar Counsel).

19

Notably, section 19(a) extends immunity for conduct taken "in the course of [Bar officials'] official duties." D.C. Bar R. XI § 19(a). While Richardson seeks relief against the defendants in this case "*individually* or in their representative capacities," Compl. ¶ 109 (emphasis added), there is nothing in Richardson's complaint to support an allegation that any of the defendants acted outside their official capacities. Thus, the immunity protection afforded by section 19(a) applies. *See Nwachukwu v. Rooney*, 362 F. Supp. 2d 183, 192 (D.D.C. 2005) (noting that where "nothing in the complaint supports an allegation that the individuals who acted on behalf of the Board and Bar Counsel did so other than in their official capacity and in the course of official duties," Rule XI § 19(a) applies and the defendants are entitled to absolute immunity).

### III. CONCLUSION

For the foregoing reasons, defendants' motions to dismiss [## 25, 26] are granted. An appropriate order accompanies this memorandum opinion.

Henry H. Kennedy, Jr.
United States District Judge